STATE TREASURER *vs.* JAMES KELSEY, Jr., URI BABBIT, AMOS PAUL and ABRAHAM MINOR.

WINDSOR, February, 1832.

The neglect of a sheriff in not serving and returning an extent, issued by the state treasurer against a delinquent constable, is a neglect happening in the county where the treasurer resides, though it be a different county from that in which such sheriff officiates.

Though the state treasurer have a right by statute to issue an extent against a sheriff for his neglect in levying and returning an extent against a delinquent constable, he is not thereby deprived of his remedy by action at law for the same neglect ; and

If the treasurer, instead of issuing an extent against such delinquent sheriff, bring an action against him for such neglect, and recover judgement therefor, and the sheriff be committed to jail on the execution,—such sheriff's bail are liable in *scire facias* for the amount of the judgement, and cannot plead in bar thereof the delay or neglect of the treasurer to issue an extent against such sheriff.

Neither can the sheriff's bail, in such case, plead in bar that the treasurer's extent against the delinquent constable was not seasonably issued.

The act requiring that a sheriff, before entering upon the duties of his office, shall become bound, by way of recognizance, with surety, before the chief judge of the county court, or, (in case of his absence or death,) before one of the assistant judges, is constitutional and valid, though the constitution provide, that said recognizance shall be taken by the chief judge only ; and

In a case where the bond was taken by an assistant judge, parol evidence was held to be admissible to prove the absence or death of the chief judge.

This was *scire facias* in favor of the treasurer of the state against the defendants as bail of *Nathan Fuller*, late sheriff of the county of Caledonia. The declaration was as follows :—

"Whereas, the Treasurer of the State of Vermont, by the consideration of the county court begun and holden at Woodstock, within and for said county of Windsor, on the first Tuesday of June, in the year of our Lord one thousand eight hundred and thirty, recovered judgement against *Nathan Fuller*, late sheriff of said county of Caledonia, for the sum of seven hundred and six dollars and forty cents damages, and the sum of seventeen dollars and seventy one cents costs, by him about his suit in that behalf expended, as to us appears of record ; and a writ of execution for the damages and costs aforesaid, in due form of law, was granted thereon, to the said treasurer, bearing date the first day of July, A. D. 1830, directed to the sheriff of the said county of Caledonia, his deputy, or either constable of the said town of Danville, and returnable to the clerk of said county court within sixty days from the date of said writ of execution ; which writ of execution was thereafterwards, to wit, on the twenty second day of July, A. D. 1830, at said Danville, delivered by the said treasurer to Silas Houghton, who then was, and ever since hath been sheriff of the said county of Caledonia, to be executed and returned according to law ; and said Houghton, sheriff as aforesaid, at said Danville, did commit the said *Fuller* to the keeper of the jail in said Danville on the same writ of execution. Afterwards, to wit, on the 27th day of July, 1830, at said Woodstock, the said Silas Hough-

WINDSOR,
February,
1832.

S. Treasurer
vs.
Kelsey et al.

ton, sheriff as aforesaid, on the day last aforesaid, made return of said writ of execution to the clerk of said county court, with his endorsement or return of his doings thereon, in the words and figures following, to wit,—" *Caledonia county, ss. July* 27, 1830 ; " By virtue of this execution, I took the body of the within named " *Nathan Fuller*, and him committed to the keeper of the jail in " Danville, in said county of Caledonia, within said prison, and " left a true and attested copy of this execution, with my return " thereon endorsed, with said jailer.

                    *Silas Houghton, Sheriff ;*"

as by said writ of exception now on file in said clerks office, of record, appears. And whereas, the said judgement on which said writ of execution was issued, was rendered by said county court against the said *Nathan Fuller*, as late sheriff of said county of Caledonia, for his, the said *Fuller's* neglect and default in not serving and returning according to law, and according to the precept thereof, three extents, to wit, one against Silas Houghton, formerly first constable of Lyndon ; one against Walter Wright, formerly first constable of the town of St. Johnsbury, and the third against Joseph Ide, late first constable of the town of Lyndon, which towns are within the said county of Caledonia ; and the said extents against said Walter Wright, Joseph Ide, and Silas Houghton, were issued on the 15th day of October, 1828, and were duly, on the said 15th day of October, 1828, delivered by the said treasurer to the said *Nathan Fuller*, to be by him executed and returned, as by the record now remaining in said court, and here ready to be shown, of the said suit, against the said *Fuller*, appears. And whereas, after the said *Nathan Fuller* was appointed sheriff of the said county of Caledonia, for the year 1827, and before he entered upon the duties of said office, to wit, on the 30th day of November, 1827, the said *Nathan Fuller* as principal, and *James Kelsey, jun.* of said Danville, and *Uri Babbit*, of said Danville, and John Weeks then of said Danville, now of Haverhill in the county of Grafton and state of New-Hampshire, *Amos Paul*, of Danville, and *Abraham Minor*, then of said Danville, now of Albany, in the county of Orleans, as sureties, personally appeared before the Hon. William A. Palmer, first side judge of the county court for said county of Caledonia, (the chief judge of said county court being then absent from said county,) and by a recognizance by them, then and there, entered into before said Wm. A. Palmer, Judge as aforesaid, and acknowledged themselves, jointly and severally, indebted to the treasurer of the said county of Caledonia, in the sum of ten thousand dollars, to be levied of their and each their goods, chattels, lands and tenements, and, for want thereof, on their bodies, if default be made in the condition annexed to the said recognizance, which was, that if the said *Nathan Fuller*, who has been duly appointed and commissioned to be sheriff of the said county of Caledonia for the year then ensuing, should faithfully discharge and perform the duties of

WINDSOR,
February,
1832.

S. Treasurer
vs.
Kelsey et al.

said office, and every part thereof, then the said recognizance was to be void and of no effect; otherwise, to be and remain in full force and virtue in law ; as by the said recognizance, a true and attested copy of which is ready to be produced in court, fully appears ; which said John Weeks now resides at Haverhill, in the state of New-Hampshire, and without the jurisdiction of any court within this State. And whereas, the said sum of seven hundred and twenty four dollars and eleven cents, being the amount of the damages and costs aforesaid, recovered in said suit against said *Nathan Fuller*, and also the further sum of twelve dollars and eighty seven cents, being the fees of said commitment of said *Nathan Fuller*, yet remain unpaid and unsatisfied to the said treasurer. And whereas, the said treasurer hath supplicated a proper remedy to be provided for in this behalf, and willing that justice should be done—By the authority of the State of Vermont, we command you to attach the goods chattles, or estate of *James Kelsey, jr. Uri Babbit, Amos Paul*, all of said Danville, and *Abraham Minor*, of Albany, in the county of Orleans, and them notify thereof as the law directs ; and for want thereof, take the bodies of the said *Kelsey, Babbit, Paul, Weeks* and *Minor*, if to be found within your precinct, and them safely keep, so that you have them to appear before the county court to be holden at Woodstock, within and for the county of Windsor, on the first Tuesday in June next; then and there in said court to show cause, if any they have, why the said treasurer should not have execution against them, the said *James Kelsey, jr., Uri Babbit, Amos Paul, John Weeks* and *Abraham Minor*, for the said sums so demanded as aforesaid from the said *Nathan Fuller*, with the interest thereon, and cost of this suit, according to the statute in such case made and provided."

At the first term of the court, the defendants appeared, and pleaded in abatement the following plea :—

" And now the said defendants come when &c. and say, that the default or neglect of said *Fuller*, sheriff as aforesaid, for which judgement was obtained against him, and on which judgement this *scire facias* is founded, happened in the county of Caledonia ; and this they pray may be enquired of by the record of this court remaining ; and in as much as this cause is not commenced and made returnable in the county of Caledonia, where, by the law of this state, the same should be, the said defendants pray judgement, that the same be abated, and that the court take no further jurisdiction thereof, and for costs."

The court having overruled the plea in abatement, and directed that the defendants answer over to the case, the defendants excepted to the decision, and subsequently pleaded as follows :

" And now the defendants come and defend, &c., when &c., and say, that the plaintiff ought not to have and maintain his said action against the defendants, for this, that the defendants were

Windsor,
February,
1832.

S. Treasurer
vs.
Kelsey et al.

bail for *Nathan Fuller*, as sheriff of the county of Caledonia, for the year commencing on the first day of December, 1827 ; and the said constables of St. Johnsbury and Lyndon in said county; had long previous to said year 1827, to wit, as early as 1826, neg-lected to collect and pay over the taxes to them committed for that purpose ; and the said treasurer should, as by law he was directed, have issued his extents against them long previ-ous to said year 1828, to wit, in the year 1827 ; yet the said treasurer without legal right, and in disregard of his duty, and more than thirty days after the next stated session of the legisla-ture, after the said neglects and delinquency of said constables, to wit, in October,1828, issued said extents to said sheriff, where-by the responsibility of said sheriff, in the levy, collection, return and payment, of said extents,which should have rested on the bail of said sheriff for previous years, was unlawfully made to rest on the defendants as his bail for the year 1828, aforesaid.    And the said sheriff having neglected to levy, collect and return, said ex-tents, so issued, as aforesaid, if any such neglect was by him un-lawfully committed, it became and was the duty of said treasur-er to issue his extent against said sheriff therefor, according to law, at some early period, at least, before thirty days had expired after the rising of the then next stated session of the legislature, in Oc-tober, 1829 ; as during which time the said sheriff was good and sufficient and responsible to have answered and paid any ex-tents, which might have issued against him for said neglects. But said treasurer, disregarding his said duty, has ever wholly neglected to issue any such extents, and after the expiration of the time wherein he by law was directed to issue the same, he unlawfully commenced a suit against said sheriff for said neglects, and neg-lecting to attach property thereon, the said sheriff, when the exe-cution thereon was afterwards issued, had become, and was, whol-ly insolvent, and unable to respond and pay the same, to wit, on the first day of July, 1830 ; whereby, and by which neglect and unlawful doings of said treasurer, his said claim has been lost ; which the defendants are ready to verify ; and therefore pray judgement that said treasurer ought not further to maintain and have his action aforesaid against them, and for their costs."

" And for further plea in this behalf by leave of court had and obtained, the defendants say, the plaintiff from having and main-taining his said action ought to be barred, because they say, that the chief judge of Caledonia county court was not absent from said county at the time of taking said recognizance in the plaintiff's declaration mentioned, nor did the defendants, together with the said *Fuller*, enter into said recognizance before the first side judge of said county court, in manner and form as the plaintiff in his declaration hath alleged ; and this they pray may be enquir-ed of by the court."

The plaintiff demurred to the first plea in bar, and joined issue on the other. On the trial of the issue, so formed between the parties on

the second plea in bar, the plaintiff offered, in support of the issue on his part, to prove the absence of the chief judge of Caledonia county court from the county, at the time of taking said recognizance, by parol proof; to which the defendants objected, on the ground that the same should only appear by the record of the recognizance. But the court overruled the objection, and admitted the proof; to which decision the defendants excepted; and the plaintiff having adduced the copy of the record of recognizance in support of said issue, offered the same, together with other testimony, that said Palmer was first side or assistant judge of Caledonia county court, at the time of taking said recognizance. To all which the defendants objected; but the court overruled the objection, and admitted the evidence. To this decision the defendants excepted. The court having rendered judgement also that the declaration was sufficient, and the plea in bar, by the defendants first pleaded, insufficient, and rendered judgement for the plaintiff, the defendants excepted, thereto : whereupon the cause was ordered to this Court; and it now came on to be heard on all the exceptions taken in the county court.

*Mr. Marsh, for the plaintiff.*—The first and obvious answer to the plea of abatement is, that the statute for the collection of taxes makes it the duty of the sheriff *to collect the extents from the constables*, and to make *return thereof, and to pay the money into the treasury of the state.—Stat.* 403, *s.* 10, 11. The breach of duty alleged is, that the sheriff did not *return the extents, nor pay the money due thereon, into the treasury of the state.* The declaration against the sheriff avers, *that the treasurer resides*, (and of course keeps the treasury,) *in Woodstock*, in the county of Windsor, where the writ was returnable. It is almost superfluous to ask, after bringing the requisitions of the statute and the breach of duty complained of together, in what county the default or neglect of duty happened. The presumption from his making no return, and paying over no money, is, that he collected the amount of the extents of the different constables, and so performed all the duty required to have been done in the county of Caledonia, and that he now retains the money. If so, the action could not have been maintained in that county according to this statute. It was not his duty to return the extents, or to pay the money, to any one, or into any office, in that county. Be all this as it may, defendants are too late to avail themselves of this objection. The 43d section, *(Stat. 70,)* merely enacts, that such

WINDSOR,
*February,*
1832.

S. Treasurer
*vs.*
Kelsey et al.

Windsor,
February,
1832.

S. Treasurer
*vs.*
Kelsey et al.

surety or sureties shall be allowed all the advantages *on trial* upon such *scire facias*, which by law the principal might have had in the original action. No one surely will pretend, then, this could have intended to give the sureties an opportunity to avail themselves of any *dilatory objections* to the original proceedings, but only of such as go to the merits, and of which the original defendant might have availed himself on the trial of an issue of law or fact. The defendants are equally lame as to any advantage to be derived from the proviso to the 2nd section of the statute of 1809, *p.* 102. This saves to the " bondsmen's surety or sureties " all the advantages on the *scire facias* that might or could have " been taken had debt been brought on the recognizance entered " into by the sheriff or high bailiff, their surety or sureties." In all cases of a debt of record, whether it be by judgement or recognizance, the law gives a remedy to the party either of debt or of *scire facias* grounded on the record. Suppose this action had been debt on the recognizance instead of *scire facias* on the judgement, could defendants have availed themselves of any dilatory objections to the original proceeding against the sheriff? This surely cannot and will not be pretended. It is further obvious that the sheriff can be guilty of no default or unfaithfulness in duty out of his county, having no powers elsewhere except in the return of process served in his own, but returnable to some other county. The legislature must have had this very case in view ; they would otherwise have said, that the sheriff's bail should be sued in his own county. As the bail might live in a county different from the sheriff, it might have been intended to prevent their being sued in such case in their own county.

However important the facts stated in the plea are, they are so inartificially stated that one is led to believe, that the plea was only intended to induce a demurrer from the plaintiff in order that defendants might avail themselves of some supposed defects in the declaration. Some facts stated in the plea appear from the declaration, and if they can avail defendants, they need scarcely to have been stated in the plea. Of this character is his not issuing extents against the sheriff directed to the high bailiff, but instead thereof instituting an action at law. This last seems to constitute the principal objection to the declaration. We will, therefore, first examine it. It is admitted that the statute *for the collection of taxes*, or the statute *relating to the treasury department*, does not in terms give the treasurer a remedy in such case by action at law.—*Stat. p.* 400, 407. Nor do these statutes take

WINDSOR,
February,
1832.

S. Treasurer
vs.
Kelsey et al.

away such remedy if other statutes, or the principles of common law, afford it. It is believed, that wherever the common or statute law imposes a duty on any officer, they generally, by implication, give a remedy for the breach or neglect of such duty by action ; and that where the statute furnishes another remedy, such remedy is merely cumulative. The statute, relating to sheriffs, bailiffs, and constables, (sec. 10,) makes it the duty of such officers to receive all writs at all times and places, and to execute the same agreeably to the directions therein given, imposes a penalty for refusing or neglecting to serve any such writ or process, and makes them am enable,for refusing or neglecting to serve any such writ,or to make return thereof,to pay the party grieved all damages thereby sustained,and costs. Is not an extent a writ or process? and is not the treasurer, in his capacity, injured and aggrieved by the neglect of the sheriff to execute and return it ? If the statutes furnished no remedy by extents,would any one doubt that an action would lie under this statute for such neglect? The *Stat. no.* 3, *p.* 207, relating to the sheriff department, (sec.2,) expressly provides, that if any sheriff becomes chargeable for any laches or neglect of duty in not duly levying or returning any writ of execution or extent, or in consequence of not duly paying over any money levied or collected on any execution or extent, and judgement shall be therefor rendered against such sheriff, and he shall be committed to jail on execution granted in such judgement, the high bailiff shall do all the duties of sheriff, &c. The legislature in passing this act certainly considered the sheriff liable to an action for not levying and collecting and returning extents. The statute for *the collection of taxes, (sec.* 10, *p.* 203,) enacts, that every sheriff, to whom any extents shall be directed, is hereby required forthwith to serve the same, and to pay such taxes collected, into the treasury. The 11 *section* of the same act speaks of the sheriff making a *non est inventus* return on such extents, &c. It then directs, that if any such sheriff shall neglect or refuse to execute any such extent, or to return the same, for sixty days, and the treasurer shall issue his extent to the high bailiff,&c. &c. Is not then the neglect of the sheriff to collect and return such extent, or to pay over the money, a breach of duty imposed on him by law ? and if so, is it not a breach of the condition of the sheriff's bond ? And though the statute furnishes a remedy by extent against the sheriff, yet will not an action lie against the sheriff, and subsequently against his bail ? But suppose the doctrine contended for be correct, what is the result ? The treasurer issues his extent against the sheriff, and for want of goods, chattels, or estate, he is committed, and re-

48

WINDSOR,
February,
1832.

S. Treasurer
vs.
Kelsey et al.

mains in jail. The statute furnishes no further remedy. The sheriff has committed a breach of duty, and of the condition of the the bond ; but the law is so impotent, that it can afford no redress ; the demand is lost to the state. The judiciary statute *(no. 22, sec. 1.)* seems to take it for granted that every sheriff and his bail are liable for any and every neglect, default, or unfaithfulness in his office and duty, and that, therefore, they may be sued and have judgement against them, and points out the mode of proceeding, &c. The statute relating to the treasury department *(sec. 2,)* makes it the duty of the treasurer annually, &c., to issue extents, or commence actions, as the case may require, against the several sheriffs, high bailiffs, constables, and other collectors, who shall have been delinquent in the collection and payment of taxes, &c., &c. This certainly seems to suppose that sheriffs and other officers who are delinquent, &c., may be liable to action as well as extent. Indeed, the position has never been doubted till the decision of the case the *Treasurer* vs. *Holmes and others, 2 Aikens' Rep.* 48. It is believed that the decision in that case does not materially affect the present question. The only question which that case presented was, whether a *scire facias* would lie against the sheriff's bail without a previous suit and judgement against the sheriff fixing and ascertaining the amount of his liability. The decision was, that a *scire facias* would not lie in such case. This decision was certainly correct, unless the act of the legislature granting a tax, and the subsequent proceeding by extent, &c., are to be regarded so far in the nature of a debt or judgement of record and execution, as to bring them within the meaning of the statute of 1809, *(sec. 1, p. 102.)* But the question whether an action would lie against the sheriff in favor of the treasurer for neglecting to serve and return an extent, was not before the court, nor at all necessarily decided in deciding the cause. And though it is true that the judge, in delivering the opinion of the court, does say, that such action will not lie, yet, it is believed, the court is not to be considered as coinciding with the learned judge who delivers the opinion, any further than his remarks are necessary in deciding the question, on which the cause turns. Nor is the judge, who delivers the opinion, supposed to examine with scrupulous care and attention the effect and tendency of such suggestions as he may incidentally throw out, and which are not necessary in deciding the cause before them. With all my respect for the learned judge who delivered the opinion of the court, I cannot subscribe to his opinion, that no action will lie

Windsor,
February,
1832.

S. Treasurer
vs.
Kelsey et al.

in favor of the treasurer against the sheriff, for not levying, &c., an extent. It is not perceived that any reason whatever is assigned for this opinion, except that the statute (i. e. the statute for the collection of taxes) does not in terms prescribe this remedy by action. The judge adopts the language of *C. J. Spencer*, in the case of the *People vs. Speaker*, viz., " The settled principle with regard to sureties is, that they are not to be made liable unless the case is brought within the very terms and scope of their undertaking.—18 *John. Rep.* 390." The very *terms* and *scope* of their undertaking is, that the sheriff shall faithfully discharge the duties of his office. The statute declares it to be his duty to receive, collect, and return, all extents delivered to him, and to pay the money collected into the treasury. The condition of the bond is then broken if the sheriff has not discharged this duty. What then is the difficulty ? The answer is, this statute directs an extent to be issued in such case, and does not in terms say the sheriff shall be liable to an action. But other statutes make him liable for every breach or neglect of duty, and so do the principles of common law, as applicable to the case, and to the bond, make the sheriff liable in the first-instance to an action, and his bail also, when his liability is fixed by a judgement. See *U. S. vs. Kirkpatrick et al.* 9 *Wheat. Rep.* 720 ; and *Dox vs. Postmaster General*, 1 *Pet. Rep.* 318, where the doctrine we contend for was fully established by the Supreme Court of the United States.

Another question which may arise on the face of the declaration is, whether the bond can be good, being taken by one of the side judges of the county court, instead of the *first judge of the county court*, according to the 27th section of the frame of government in the constitution of this state, under any circumstances ; or in other words, whether the statute directing, " *that in* " *the absence of the chief justice, any other judge of the same court* " *may take the bond*," is unconstitutional and void. The constitution uses the words *first judge*, instead of chief justice. We think it may be fairly contended that the judge first appointed, as a judge of the county court, is, strictly speaking, the *first judge* of the county court. He surely is the first appointed, *eo nomine*, as judge of the county court. The judges of the Supreme Court are not judges of the county courts by appointment ; that is, they are not appointed as such, but made presiding judges of the county courts by statute, not by appointment. They are not, therefore, strictly speaking, judges of the county courts. The *first side judge*, as the courts are now constituted, is the *first*

Windsor,
February,
1832.

S. Treasurer
*vs.*
Kelsey et al.

*judge* of the county court within the letter and spirit of the constitution. Whether the legislature can direct by law any other mode of taking the sheriff's bonds than that pointed out, and whether a bond taken in pursuance of such directions would be good, or, in other words, whether the judges of the Supreme Court, setting as judges of the county courts, can take such bonds, must be left till such question arises in due course of legal proceedings.

There are *two*, perhaps three or four other questions brought upon the record by the plea in bar, and which do not arise on the face of the declaration, and which it may be supposed the defendants rely on ; but they are stated in such loose manner that one can scarcely tell whether they are relied on or not.   1st. That the extents against the constables were not issued within thirty days after the rising of the general assembly next after the taxes became payable into the treasury, according to the act relating to the treasury department, *sec.* 2, making the duty of the treasurer so to issue them.—*Stat.* 407.   2nd. That the treasurer by not issuing them within said thirty days, but issuing them long after, viz. in October, 1828, relieved the bail taken for the year commencing in December, 1826, from the responsibility of the good conduct of the sheriff, and left the responsibility to rest on defendants, the bail for the year commencing in December, 1827, according to his duty imposed by the same act.   3d. That the treasurer did not issue his extents against the sheriff within thirty days after the rising of the general assembly in October, 1829 ; the sheriff then being good and responsible.   4th. That he instituted the action on which this *scire facias* is grounded, and in that action neglected to attach property, and the sheriff, before execution issued, viz. in July, 1830, had become insolvent ; whereby the treasurer's claim was lost.   It may be answered that the 2nd section of the act, referred to, makes it the duty of the treasurer to issue extents against all officers liable to them, within thirty days, &c., for the mere purpose of making him responsible to the state in case of neglect for all such sums as were due from such officers, and not to confer any benefit or privilege on them or their bail.   If the treasurer has a right of action for any delinquencies of the officers charged with the collection of taxes, this statute does not take away such remedy.

But the plea seems to suppose that these neglects of the treasurer operate to release the bail from their liability for the sheriff's omission of duty ; and in relation to this effect they may all be

WINDSOR,
February.
1832.

S. Treasurer
vs.
Kelsey et al.

considered at once. The delay in regard to two of the extents against the constables was for two years after they should have been issued according to the requisitions of this act, and as to the other, it was one year only. 1st. The treasurer, regarding himself as responsible under that act for his neglect, had the right to use his discretion as to the time of issuing these extents against the constables ; and it seems to be a matter with which the sheriff's bail, who became liable for his subsequent omission, have nothing to do. 2nd. The idea of throwing the responsibility on to one set of bail, rather than another, being an excuse, seems quite idle. A creditor may take execution on his judgement at any time within the year. Taking it after rather than before the first of December, and giving it out, and thereby throwing the responsibility on to a different set of bail, would certainly be an idle excuse for such bail. 3rd. In relation to issuing an extent against the sheriff, it may be answered, that this depends on the question, whether in such case the sheriff is liable to an action at all, and so whether the remedy by extent is merely cumulative. Issuing the extent would probably have ended in the commitment of the sheriff, and his remaining in jail, and so the plaintiff would have lost his remedy against the bail, according to the decision in the *Treasurer* vs. *Holmes and others*, 2 *Aikens'*, 48. The New York cases on the subject of delay to collect, as it effects sureties, are familiar to the bar. It seems now perfectly well settled in that state, *that mere delay for any length of time whatever will not release the sureties ; that an agreement by the creditors with the principle to wait any given time beyond the time stipulated in the security, without the consent of the sureties, will discharge them.* Whether a neglect to sue and collect the money of the principal, *after being requested* by the sureties, will discharge the sureties, is not well settled. In the case of *The People* vs. *Jansen*, (7 *Johns. Rep.*312,) it was decided, that a neglect for ten or twelve years to sue, &c., was a release of the sureties. In *Paine* vs. *Packard*, (13 *Johns. Rep.* 174,) this doctrine was overruled, and it was however decided, that if the creditor neglect to sue after being requested by sureties to sue, and the principal afterwards fail, the surety is discharged. In *Fulton* vs. *Matthews*, (15 *Johns. Rep.* 433,) the plea was mere delay on the part of creditor, when there had been no request to sue, and the plaintiff had judgement. In *Powell* vs. *Waters*, (17 *Johns. Rep.* 176,) there was the same decision. In *King* vs. *Baldwin*, (2 *J. C. Rep.* 554,) the chancellor decided that delay after re-

WINDSOR,
February,
1832.

S. Treasurer
vs.
Kelsey et al.

quest by surety would not release the surety. But in *King* vs. *Baldwin*, (17 *Johns. Rep.* 384,) in the supreme court of errors, this question was reversed by the casting vote of the president, *Lieut. Gov. Taylor*. It is believed that the modern English decisions coincide with the cases just referred to. There is then no pretence that the delay of a year or two, as in the present case, can release the bail. In *Dox* vs. *Post Master Geneaal*, (3 *Pet. Con. Rep.*394, and *Dox* vs. *P. M. G.*, 1 *Pet.* 325,) it is decided, that the claims of the U. S. upon an official bond, and upon all parties thereto, is not released by laches of the officers to whom the assertion of the claim is intrusted by law. Such laches have no effect whatever on the rights of the U. S. as well against the principal as against the sureties. This case has been before referred to and observed upon, in relation to the defendant's plea in bar. There are two pleas in bar, in the last case cited, nearly similar in amount to the defence set up in the case at bar. One sets up that the principal, *Gerill L. Dox*, was removed from office, 1st July, 1816; that the *P. M. G.* knowing there were sureties, did not open an account with the principal, nor make any claim or demand of him, as post master, until July, 1821; that then he did open an account, and claim and demand of *Gerill L. Dox*, $3041,35.; that *G. L. Dox*, at the time of his removal, was solvent, and able to pay his debts, and continued so for three years, and then became insolvent, &c. &c. Another plea to the same effect was filed to another breach assigned to the bond. Issue was taken on these pleas, and a verdict was found on them for the defendants. On the other issues verdicts were for the plaintiff, and damages assessed at $6000. These pleas in bar covered the plaintiff's whole cause of action. On motion in the district court, judgement was entered for the plaintiff, notwithstanding the verdict, and this was affirmed in the Supreme Court. This case fully justifies the plaintiff, in demmurring to the plea in bar, and shows that there is nothing in the facts stated which amounts to a defence.

There are two averments in the declaration which are traversed, and issue joined on them. The first is, that Wm. A. Palmer, Esq. was *first side judge* of the county court of Caledonia county when he took the bond in question. The second, that the chief justice of the county was then absent from the county. The journals of the general assembly were offered in support of the first, and parol proof in support of the other. It was objected to the proof offered in both points, that these facts should have

appeared from the record of the recognizance. The first is an immaterial issue, except it be supposed his being first side judge brings him within the constitutional provision of *first judge* of the county court. If this makes him *first judge,* and so the bond good, in fact, according to that provision, surely this may be shown, (though it appear not in the face of the bond,) by the record of his appointment. If he acted officially as judge, it must be that he acted in the capacity in which he was appointed to act. The office of a judge of a court of law is an office of notoriety, and the court will take notice of such office as being what his appointment makes him, without proof. The absence of the chief justice is mere matter *in pais,* and must of necessity be proved by parol. If it had been certified in the doing of the side judge in taking the bond, it would not have proved the fact. It must still have been proved by some other testimony, if it needed proof. But the court will presume from the very fact, that a side judge acted on the occasion, that the chief justice was absent ; and the fact is as well sustained by this presumption as if it had been certified in the record of the recognizance. It is contended that, notwith-standing the requisition of the constitution, the sheriff shall give security before *the first judge* of the county court, yet the le-gislature may point out other modes of taking bonds from such offi-cer, and that such bond, taken in pursuance of such provision, will be good. It is observable that by the 27th *section* of the constitution, the *manner* and *sum* in which the bonds should be taken, is left to be decided by the legislature. Nothing could have been inten-ded as being imperative in the legislature in the expression, *first judge* ; and nothing can be more unimportant in itself than the question, whether the act should be done before one or another judge of the same court. We think, therefore, that any one, offi-ciating as judge of the county court, may take bonds from the sheriff, and that such bond-so taken will be sufficiently within both the letter and spirit of the constitution and the statute.

*Mr. Collamer for the defendant.*—I. The first question arises on a plea in abatement. The statute requires that *scire facias* against sheriff's bail shall be brought in the county where the default or neglect, sued for, happens.—*Statute, page* 102. This is *scire facias* for the default or neglect of the sheriff of Caledo-nia county in " *not serving and returning according to law, and the precept thereof, three certain extents*" against constables for state taxes. Now the question is, should this be sued in Caledo-

Windsor,
February,
1832.

S. Treasurer
*vs.*
Kelsey et al.

WINDSOR,
*February,*
1832.

S. Treasurer
*vs.*
Kelsey et al.

nia county ? The defendants insist, that the default or neglect declared for, happened in said county of Caledonia. Neglects in themselves have no locality ; they are neglects every where: but all official neglects happen in the official precinct ; and it cannot be said an officer commits a neglect or default in a county to which he does not belong, and in which, perhaps, he never was. By any other construction, the said direction of the statute is rendered nugatory.

II. The next question arising on the demurrer to the first plea in bar, is as to the sufficiency of that plea. The substantive principle,on which the plea is founded, is,that the treasurer is fully directed by statute how and *when* to issue his extents for collecting taxes ; and has not power to issue them at other times, and thereby visit the responsibility on others. By neglecting to issue an extent against *Fuller* when directed by law, a case has accrued, in his failure, which is now attempted to be visited on *Fuller's* bail. —*Stat. p.* 404. By neglecting seasonably to issue extent, the treasurer has made himself chargeable to the state ; and he, like a sheriff, has no right to neglect his duty in collection, and then have suit to indemnify himself for his own neglects.—15 *John. Rep.* 256, *Thomson* vs. *Lockwood* ; *Bray. Rep.* 24, *Flagg* vs. *Walker* ; 7 *John. Rep.* 426, *Reed* vs. *B—— and Staats* ; 7 *John. Rep.* 319.

III. Under the operation of this demurrer the defendants insist that said declaration is insufficient. It declares on a recognizance taken before the first side judge of Caledonia county, for the faithful discharge of the duty of *sheriff*, when the constitution requires it to be taken by the first judge or chief judge. The first side judge is not the first judge of said court. The statute authorizing either side judge to take such bail is unconstitutional and void. The legislature might as well have authorized a justice of the peace to take it. These defendants are not foreclosed by the judgement against the sheriff from examining into the same, and shewing it unfounded, as it was *res inter alios acta* ; and this right is preserved to them by statute ; and the defendants insist, that said suit was not legally maintainable, (*Stat* 102 ;) for the mode of enforming taxes is provided for by statute, and is a *system* by itself,and furnishes all the security the government requires ; and if more is necessary, the legislature are to provide it. The statute does not authorize a proceeding by *suit* against the sheriff,but by extent.—2 *Aikens' Rep.* 48, *Treasurer* vs. *Holmes et al.* That was a sufficient security in this case, had it been seasonably pur-

WINDSOR,
February,
1832.

S. Treasurer
vs.
Kelsey et al.

sued ; and if not the *treasurer* must pay. To hold otherwise, extends the liability of the bail beyond what was contemplated when entered into. The record of judgement and execution, and the record of neglect and extent, are equally high in evidence, and, therefore, the latter not merged in the former, and, therefore, no judgement could be obtained, as it answered none of the legitimate purposes of a judgement.

IV. The defendants insist there was error in the admission of testimony, on the trial of the issue of the seccond plea in bar. Even should the court think that the first side judge may, under the statute, take a sheriff's bond, still, the defendants insist it must appear *by the bond* that the person taking it *was* of that capacity, and *acted* in that capacity, neither of which appear by this bond ; and that the same cannot be supplied by testimony *aliunde* as was here permitted. Besides, the recognizance did not support the issue as to the first side judge. The contingency on which the side judge is permitted to act should appear by the record of the recognizance, and not be supplied by parol.

BAYLIES, J., *delivered the opinion of the Court.*—As the treasurer of the state resided at Woodstock, in Windsor county, and here kept his office, it was the duty of *Nathan Fuller*, as sheriff of Caledonia county, if he collected the money on said extents, to have paid it to the treasurer at his office ; or if said *Fuller* did not collect the money, it was his duty to have returned said extents to the treasurer at his said office. But as *Fuller* did not pay over the money, nor return the extents, it may be said, that he, as sheriff, neglected his duty in Windsor county, and was sueable here for this neglect. I conclude, that the action against *Fuller* was rightly brought in Windsor county, and was not *abateable*, because it was not brought in Caledonia county, where *Fuller* was sheriff. I therefore consider, the county court did right in overruling the plea of abatement to this *scire facias*.

I will now pass to the *first plea in bar*, and enquire, whether the treasurer of the state had a right to maintain his action at law against *Fuller*, as sheriff, for his neglect of duty in collecting and returning the extents, which the treasurer put into his hands to collect and return ? After duly considering the authorities referred to by counsel, and the several statutes, which have a bearing upon the question, I am satisfied, the treasurer had a right to maintain his action at law against *Fuller*, as sheriff, for his neglect. The treasurer, having a right by statute to issue his extent against the

49

WINDSOR,
February,
1832.

S. Treasurer
vs.
Kelsey et al.

sheriff for his neglect, was not thereby deprived of his common law, or statutory right, to sue for the same neglect : these different remedies were concurrent.

Under the first plea in bar, the defendants call on the Court to decide, whether the delays of the treasurer to issue his extents against the constables and sheriff, did not discharge the defendants from their liability ? If we consider the treasurer, as it respects this transaction, in the light of a creditor, and *Fuller*, the sheriff, as principal debtor, and the defendants as sureties for *Fuller*, there can be but little doubt as to the liability of the defendants. If the creditor tie his hands by contract with the principal debtor, so that he cannot sue him for his debt, this will discharge the sureties. But if the creditor does not tie his hands, and neglects ever so long to sue the principal debtor, such neglect will not discharge the sureties. And if the creditor is requested by the sureties to sue the principal debtor, and collect the debt, and the creditor neglects or refuses to sue, this will not discharge the sureties from their liability.

But a request to sue, and an offer to save the creditor harmless against costs, and a subsequent neglect of the creditor to sue, may furnish ground for a court of equity to decree the demand to be put in suit, that the money may be collected of the principal debtor, and his sureties be saved harmless. In support of the above principles, see *Hubbards* vs. *Thos. Davis et al.* 1 *Aik.* 296 ; *Hogaboom* vs. *Herrick*, ante, 131 ; *Davey* vs. *Prendergrass*, 7 *Com. Law Rep.* 62 ; *Orme* vs. *Young*, 1 *Holt's Rep.* 84 ; 3 *Com. Law Rep.* 35 ; *Heath* vs. *Key*, 1 *Young and Jarvis*, 434 ; *Eyre* vs. *Everett*, 2 *Russell*, 381.

But the defendants do not accuse the treasurer of having tied his hands, so that he could not issue his extents ; but they charge him with negligence. A mere neglect to issue the extents will not exonerate the defendants from their liability.

Under the demurrer to the first plea in bar the defendants insist that the plaintiff's declaration is insufficient in the law, inasmuch as it counts on a recognizance entered into by the sheriff and his bail before the *first side judge* of Caledonia county, and not before the *first judge*. This is a constitutional question of no small importance, as the decision of it may affect sheriff's sureties to a large amount. In deciding this question, it may be well to take into consideration the constitutions and statutes of this state, from the first organization of the government to the present time, so far as they may have a bearing. The constitution of 1777,

WINDSOR,
February,
1832.

S. Treasurer
vs.
Kelsey et al.

*ch.* 2, *s.* 27, says, "That the general Assembly, when legally formed, shall appoint times and places for county elections, and at such times and places the freemen in each county respectively, shall have the liberty of choosing the judges of inferior courts of common pleas, sheriffs, justices of the peace, and judges of probates, commissioned by the governor and council, during good behaviour, removable by the general assembly upon proof of maladministration."

By an act of 1779, the sheriff, when appointed as above, was required to " become bound before the governor and council with two sufficient sureties, freeholders in this state, by a recognizance in the sum of two thousand pounds, for the faithful administration, and discharge of said office, and for the answering all such damages as any person or persons shall sustain, by any unfaithfulness, or neglect in the same."—(*Vt. State Papers*, 252, 348.)

The above 26th section of the constitution of 1777, enabled the people' to choose their sheriffs, who were to hold their office during good behaviour—removable by the legislature upon proof of mal-administration. But this mode of electing sheriffs, and giving bonds before the governor and council, was soon changed. By the constitution of 1786, *ch.* 2, *s.* 9, the general assembly in conjunction with the council, were empowered to elect *sheriffs* annually, or oftener, if need be. And the 24th section of the same chapter says, "The treasurer of the state shall, before the " governor and council, give sufficient security to the secretary of " state, in behalf of the general assembly, and each *high sheriff* " before the *first judge* of the county court, to the treasurer of " their respective counties, previous to their respectively entering " upon the execution of their offices, in *such manner* and in *such* " *sum*, as shall be directed by the legislature." Under this constitution the act of 1787, was passed, which says, "The sheriffs " shall become bound to the treasurers of their respective coun- " ties, before the *first judge* of the county court, with two suffi- " cient sureties, freeholders, within this state, by a recognizance " in the sum of three hundred pounds, for the faithful discharge " of said office, and for the answering all such damages as any per- " son or persons shall sustain by any unfaithfulness, or neglect in " the same."—(*Haswell's Ed. of the laws*, 161.)

This act made no provision, that in case the *first judge* was dead, or absent, the sheriff might give his security to the county treasurer before *either of the assistant judges*. This omission was considered a defect. But the constitution of 1786 ceased,

WINDSOR,
February,
1832.

S. Treasurer
vs.
Kelsey et al.

and the constitution of 1793 was adopted.—*Ch.* 2, *s.* 9, of this constitution, enabled the general assembly in conjunction with the council to appoint sheriffs annually. And the 27th section of this chapter is precisely the same as the 24th section of the constitution of 1786. Under the constitution of 1793, the act of 1797 was passed, which says, " The sheriff shall become bound by " way of recognizance to the treasurer of the county of which he " is sheriff, before the *chief judge* of the county court, (and in " case of death or absence of the chief judge, before *one of the* " *assistant judges,*) with two or more sufficient sureties, freehol- " ders within this state, in the sum of ten thousand dollars, for " the faithful discharge and performance of the duties of his " office, and every part thereof ; and shall take the oath of office, " before the judge taking such recognizance, which shall be cer- " tified on his said commission."—*( Slade's Ed. p.* 200.) By this act, the evil that was experienced under the act of 1787, was remedied ; that is, if the *first* or *chief* judge be dead, or ab- sent, the sheriff might give security before *either assistant judge.* But had the legislature *power* to pass this act to enable the sheriff to give security before *either assistant judge,* when the 27th sec- tion above required the security to be given before the *first* judge of the county court ? There is nothing in the constitution, that ex- pressly negates the power of the legislature to pass this act. I consider this act gives a legislative construction to the 27th sec- tion of the constitution ; and after a practice of thirty four years in conformity to this act, it is too late to call in question its validity. In the case of *Stuart* vs. *Laird,* (1 *Cranch,* 300,) the court de- cide, that a contemporary exposition of the constitution, practised and acquiesced under for a period of years, fixes the construction ; and the court will not shake or control it. At any rate, it is not the duty of this Court to pronounce the act of 1797 unconstitu- tional and void, when it is not manifestly so. In this case, the sheriff gave his security before one of the *assistant* judges of the county court, in the *absence* of the *first* or *chief* judge ; therefore, the security is considered good.

The act of 1825, says, " the sheriff's and high bailiff's bonds may be taken by either judge of the county court." If the sher- iff's bonds be taken before one of the *assistant* judges of the county court, in the *presence* of the *chief* judge of said court, it is doubtful whether such bonds would be good.

It is not perceived, that the county court improperly admitted, or rejected evidence on the trial of the issue of fact under the se-

cond plea in bar. All the exceptions of the defendants are overruled, and the judgement of the county court, in favor of the plaintiff, is affirmed with additional costs.