J. A. WING *Executor of* W. P. BRIGG'S ESTATE *v.* ROLLA GLEASON ET AL.

*Judges.    Sheriff's Recognizance.    Constitutional Amendment of* 1850.

County courts having, by legislative action in 1824, ceased to have a local chief judge in each county, the statute of 1839 requiring a sheriff's recognizance to be taken before the first judge of the county court, was complied with by its being taken before the assistant judge of the county whose name appears first in order upon the record of the election.

The existing statute on the subject of taking sheriff's recognizances was not abrogated by the adoption of the amendment to the constitution in January, 1850, relating to the·same subject.

This amendment of itself, and by its own force, was not intended to make any change in the law without the action of the legislature.

It is well settled that when a question of law has been decided in a cause, the court would not again consider it in the same case, even if the correctness of the decision was doubtful. It is *held,* that this principle might well be applied though the parties be changed.

SCIRE FACIAS upon S. W. Taylor's recognizance as sheriff of the county of Chittenden for the year ensuing from December 1st, 1850. The defendants demurred to the plaintiff's declaration, and the court at the April Term, 1862, rendered judgment *pro forma* for the defendant,—to which the plaintiff excepted.

The declaration alleged in substance that S. W. Taylor formerly of Burlington in the county of Chittenden, now of parts

unknown, was duly elected sheriff of said county on the first Tuesday of September, 1850, and that on the 4th of December, 1850, he as principal and John N. Pomeroy, William H. Wilkins, Jr., Albert L. Catlin and Rolla Gleason, as sureties, "personally appeared before the Hon. ISRAEL P. RICHARDSON, then first assistant judge, and first judge of Chittenden county court," and entered into a recognizance before him as first assistant judge in the usual form for the said Taylor as sheriff,—which recognizance was duly executed and recorded ; that Rolla Gleason was appointed a deputy sheriff of said county and so remained while Taylor was sheriff; that he had put into his hands two writs, among others, against William P. Briggs, returnable to the Washington County Court at its November Term, 1851, one in favor of the National Life Insurance Company, demanding $1500., and one in favor of George W. Reed, demanding $3000. ; that on the 22d day of September, 1851, he served these writs by attaching the property of Briggs, consisting of hay, grain, &c., of which he neglected to take reasonable care, whereby the same suffered damage and loss ; that thereupon Briggs brought an action against the sheriff Taylor for the misconduct, neglect and default, on the part of his deputy, and recovered judgment thereon at the September Term, 1860, and the case having passed to the supreme court judgment was affirmed at the January Term, 1862, in the name of Joseph A. Wing of Montpelier, in the county of Washington, executor of the last will and testament of said Briggs, who had before then died, and the said Wing had been duly appointed his executor. The damages recovered were $11.88, and the costs were taxed at $219.71, and thereof execution was awarded to said Wing as such executor, which was duly placed in the hands of a proper officer to serve, who made return that he could find no goods, chattels, lands, or the body of the said Taylor, whereon to make service of said execution. And the sureties upon said recognizance were summoned to appear before the county court next, &c.. to show cause why said Wing, executor, &c., should not have judgment against them for the amount of the judgment against Taylor. The judge signed the recognizance as follows : "Israel P. Richardson, first assistan judge of Chittenden County Court."

*Daniel Roberts* and *J. A. Wing,* for the plaintiff.

*G. F. Edmunds,* for the defendants.

POLAND, CH. J.  The defendants claim that the recognizance upon which this action is brought does not bind them for two reasons.

1. That it was not taken in accordance with the provisions of the revised statutes on the subject of sheriff's bail.

2. That if this be held otherwise, than that this provision of the revised statutes was repealed or annulled, by the adoption of the amendments to the constitution in 1850 ; which it is insisted conflict with the then existing statute.

The first objection rests upon the assumption that Israel P. Richardson before whom this recognizance was taken, was not at the time, the *first judge* of Chittenden county court.

The conceded fact is, that Richardson was one of the county judges elected for that county, and the one whose name appears first in order upon the record of the election.

The constitutional provision on this subject, prior to the amendment of 1850, was as follows :  " Each high sheriff shall give security, &c., before the first judge of the county court, &c., in such manner, and in such sums, as shall be directed by the legislature."

In· 1797 the legislature provided, that sheriff's recognizances should be taken before the Chief Judge of the county court, or in case of his death or absence before one of the assistant judges.

It cannot be doubted we think, when this provision of the constitution was adopted that the language used, *first judge,* meant *chief judge,* as the county courts were then constituted of a chief judge and two assistant judges, all chosen within and for the county. Yet it was held in *State Treasurer* v. *Kelsey et al.,* 4 Vt. 371, that a sheriff's recognizance taken according to the requirement of the act of 1797, before one of the assistant judges of the county court, in the absence of the chief judge, was legal and binding on the sheriff and his sureties.

The original organization of the county courts, consisting

wholly of local judges, continued until 1824, when a new judicial
system was adopted, substantially the same as now exists, by
which the county courts were to be composed of two judges to
be elected in each county, and a chief judge, who was to be one
of the judges of the supreme court, elected by the legislature for
the state at large.    This system continued without interruption
down to 1850, when the supreme court was reduced to three
judges, and made exclusively a *banc* court, and circuit judges
were substituted as presiding judges in the county courts.

In 1825, the next year after the county courts ceased to have a
local chief judge, the legislature provided that sheriffs recogni-
zances might be taken before either of the judges of the county
court, and this law continued unaltered down to the revision of
1839.    During all this period sheriffs' recognizances were taken
as provided by statute before either of the county judges, and
without question so far as we ever knew or heard, but that the
statute and practice were in substantial compliance with, and
conformity to the constitution.    In the revision of 1839, the
statute on the subject of sheriffs' recognizances was made to
conform to the language of the constitution ; they were to be
taken "before the first judge of the county court."

The defendants insist, that after the change in 1824, by which
the county courts ceased to have a local chief judge, a sheriff's
recognizance could be properly taken only by a judge of the
supreme court, or a circuit judge, who were *ex officio* chief judges
of the county court.

But while these county judges were elected annually by the legis-
lature, (as they were till 1850,) they were uniformly designated
in legislative proceedings, and usually in legal proceedings, and in
ordinary conversation, as *first assistant* and *second assistant* judges.
And after the amendments to the constitution in 1850, by which
these, as well as other county officers, were made elective by
the people of the counties, the same designation was continued.
The one first named on the voting tickets, and in the returns
and record of the election, being still styled the *first*, and the
other the *second* assistant judge.    So universal and well recog-
nized was this, that it has been adopted and sanctioned by the

legislature itself. See § 9, chap. 48, G. S.—where the first assistant judge of the county court is authorized to act as judge of probate, in certain cases, when the judge of probate is disqualified. While the framers of the constitution by the words *first judge* of the county court meant the same as *chief judge*, they meant also, by their language, a local judge of the county, a resident of it, and elected within and for the county, and had no reference whatever to a state judge, who might live in a distant part of the state, be an entire stranger in the county, but who might, by some future change in the judicial system become authorized to preside in the county court, when sitting as a legal tribunal for the trial of causes. The existing state of things at the time of the adoption of the constitution, the nature and object of the required duty, satisfy us as to this general purpose and spirit of the article in question, and when by the legislative action there ceased to be a local chief judge in each county, the legislature followed the true spirit of the constitution in devolving the duty upon another local judge of the county court, though not chief judge, rather than upon a chief judge, who was not, for the performance of such local and business duties, a judge of the county court at all.

This duty, we think, is kindred to various duties devolved upon the judges of the county court, such as the erection of county buildings, purchasing land on which to erect the same, making and paying for repairs, settling the county expenses and accounts, where no one ever supposed that a supreme or circuit judge who might be *ex-officio* chief judge of the county court, had any right or duty to interfere. Such a chief judge is, in our opinion, only so of the court as a legal tribunal, or where it acts in the aggregate as such. These views we believe are fully sanctioned by a long course of legislative and judicial action, and by uniform practice and common understanding during the whole period.

2. Was the existing law abrogated by the adoption of the amendments to the constitution in January, 1850?

Several amendments which had been proposed by the council of censors to the constitution, were adopted by a convention held in January, 1850, and thus became a part of that instrument.

Among these alterations and amendments, they provided that "sheriff's shall give security, &c., before one of the judges of the supreme court, or the two assistant judges of the county court of their respective counties, in such manner and in such sums as shall be directed by the legislature."

At the next session of the legislature, in the fall of 1850, an act was passed providing that if any sheriff should fail to furnish the security required by the revised statutes for ten days after the first day of December the office should be considered vacant. Now, this act cannot be considered as having been passed to carry out and effectuate this new provision of the constitution, to have the security taken before a judge of the supreme court, or the two judges of the county court, because it expressly refers to the security required by the revised statutes, which was to be given before the first judge of the county court.

It is very likely that this was mere inadvertence, and perhaps it may be true that some ignorant blunderer intended it as an enactment to carry out the new constitutional provision. But it does not appear so on the face of it. The act does not profess to make the slightest change whatever in the sum or manner of taking sheriffs' recognizances, or the authority by whom they are to be taken. It merely provides that if the sheriff does not give the required security within ten days after the commencement of his official year, he vacates the office. This question is then wholly unaffected by the act of 1850. It makes no change of the law, and does not profess to.

It is left then to stand upon the effect of the adoption of the amendment upon the existing law. Was it intended, by its own force, and at once to alter the law, without any action by the legislature?

There was an existing legislative provision on the subject, as to the authority by whom, and the sum and number of sureties in which sheriffs' recognizances should be taken.

The new constitution merely changed the officer before whom this security should be given, and expressly provided it should be done "in such manner and sum as *shall be* directed by the legislature." It clearly contemplated future legislative action to perfect

and carry it out before it could become effectual and operative. Plainly it has no reference to any existing law as furnishing any rule on the subject, but to future legislation. The amendment as clearly required the security to be given in the manner and sum that *shall be directed by the legislature*, as that it should be before a judge of the supreme court, or the two county judges, and till such action by the legislature, the amendment could not be complied with. In my view, it is clear that this amendment of itself, and by its own force, was not intended to make any change in the law, without the action of the legislature. It was designed to be mandatory to the legislature, an injunction, or direction to them to furnish the proper legislation to effect this. It is said that they expected that this would be done before the commencement of another official year of sheriffs; but this is of no avail, the question is, whether this amendment itself altered the law, or whether future legislation was necessary. If future legislation was necessary, then it matters not whether it failed through ignorance, inadvertence or contumacy, the law was not altered, till legislation was had on the subject.

It is said that it would be a singular anomaly, that a constitutional provision should rest in abeyance, waiting the action of the legislature to put it in operation. But this is by no means singular or unusual. Our own constitution has some instances of this in directions to the legislature to pass laws providing a state prison, &c., and also to pass laws providing for schools and grammar schools. Constitutions of many of the states have still more specific directions to their legislatures as to the subjects and course of legislation. But it was never supposed that such direction was, of itself, an active, specific enactment, without action by the legislature. It casts a duty upon the legislature, but not on the citizens till the legislature have specifically defined and fixed it by law.

By holding that this amendment became instantly in force, and cut down so much of the existing statute as does not conform to it, and then ekeing it out by what is left of the existing law, or by a future law designed for no such purpose, and professing no

such thing, we set a trap for the unwary and dig a pit into which all plain men are sure to fall.

We fully understand that the constitution is the supreme law, and that legislation which conflicts with it, is invalid, but we by no means propose to violate either of these common principles.

We understand also, that the provisions of the constitution, and all legislation, are if possible, to be so construed that all may stand, and that it is the duty of all courts to make even forced constructions, if not unreasonable, to uphold legislation, and all honest contracts entered into in obedience to its requirements and directions.

We understand too, that this very question has been expressly decided by this court upon this same recognizance in *Taylor* v. *Nichols et al.*, 29 Vt. 104. It is said that the decision of this point was not necessary to the decision of that case; that the other point decided in the case, that Taylor was at least sheriff *de facto*, and that was enough to enable him to maintain that suit, was sufficient to decide the case, and that therefore, the decision of this point was merely *obiter*.

But precisely the same might be said of the other point, and so the case be of no authority at all. As was said by Judge RED-FIELD in a recent case, if a decided case is to be considered as authority at all, it must be on the grounds upon which the decision is made.

It seems to us however, that the reasons given for the decision of this very question in *Taylor* v. *Nichols* are well founded, and that we are not warranted in reversing that decision. It has been settled by repeated decisions of this court, that when a question of law has been decided in a cause, the court would not again consider it in the same case, even if the correctness of the decision was doubtful. This case is between different parties from *Taylor* v. *Nichols*, but that decision was upon this very contract of recognizance, and the principle of the cases alluded to might well be applied.

Some observations of Judge REDFIELD in giving the judgment

of the court in *Taylor* v. *Nichols*, that the provisions of the constitution as to the form of taking recognizances in these cases, and as to official oaths generally, might be regarded as *directory* merely, were disapproved in *Courser* v. *Powers*, 34 Vt. 517, but the general doctrine of the case was not in any degree shaken. We do not consider that any constitutional provision is ever to be regarded as *directory* merely, in the sense in which we use that term as applied to statutes, but that constitutions may contain mandatory directions to the legislature, to enact laws on a particular subject, which do not themselves have the force of law, until action under them by the legislature, we think cannot be doubted. We regard this amendment of 1850 in relation to sheriffs' recognizances as of this character.

This view of the subject enables us to preserve both the constitution and the statute inviolate, as well as to do substantial justice.

All the legislation upon this subject, as well as the judicial decisions upon it, show that the provisions of the constitution have never been regarded strictly, and that a substantial compliance has only been considered to be necessary. In this case, we think there has been such substantial compliance, and that we ought not by the application of mere refinement to overthrow it. The defendants intended to make themselves liable for the official good conduct of Taylor as sheriff, and supposed they made themselves so in legal form; Taylor in virtue of this act enjoyed the office of sheriff; the plaintiff suffered an injury by the default of Taylor's deputy, for whose acts Taylor is doubtless well indemnified, but the plaintiff can only reach the deputy through Taylor and his bail. The injustice of depriving him of his remedy is too much to be suffered unless the rules of law absolutely require it. In our opinion they do not.

In this opinion a majority of the court concur.

The judgment of the county court is therefore reversed, and judgment rendered for the plaintiff.