The inhabitants of the town of MONTVILLE *against* HAUGHTON *New-London, July, 1829.* and another.

Where a town tax was voted, by the town, in *November* 1823, on the list of 1823, and in *August* 1824, after such list was perfected according to law, a rate-bill was made out thereon, which, with a warrant annexed, was put into the hands of the collector for collection ; it was held, that this was a legal tax.

The enactment of an explicit provision on a given subject, does not, of itself, prove, that the law on that subject, was different before ; as such enactment may have been made in affirmance of the existing law, and to remove doubts.

Where a bond was executed to the select men of a town and their successors in office, by a collector of town taxes, to secure such town from loss, by any unfaithfulness in the official duty of the obligor ; it was held, that the town, being the sole party in interest, was the proper party plaintiff to a suit in chancery for relief on such bond.

A collector of town taxes being an authorized agent to collect moneys due the town, it is lawful for such town to take a bond, with surety, from such collector, for the faithful performance of his duty.

Nor will such bond be regarded in chancery as a voluntary agreement, but as founded upon a sufficient consideration, not illegal or opposed to sound policy.

A court of chancery will, therefore, enforce such bond against principal and surety ; especially, if the surety be fully indemnified.

If in the execution of an instrument intended as a bond, the seal be omitted, by mistake, chancery will supply the defect.

Though the party named as obligee in such instrument may sue thereon at law, it does not follow, that he has adequate remedy at law ; for he is entitled to a security, the consideration of which cannot be enquired into at law.

It seems, therefore, that a seal is necessary to give an instrument, in other respects sufficient, the full effect of a deed.

THIS was a bill in chancery, to obtain the correction of a mistake in a bond executed by the defendants, and to compel payment of the amount due on such bond according to the condition thereof.

On the 17th of *November,* 1823, *John W. Haughton* was appointed, by the town of *Montville,* collector of the town taxes in that town. On the same day, a tax of three cents on the dollar on the list of 1823, was voted. In *August,* 1824, after the list was perfected according to law, a rate-bill was made out and delivered to him, with a warrant annexed, duly signed, requiring him to collect and pay over the tax, amounting to 713 dollars. Before the delivery of a rate-bill, however, the select-men required of him a bond, with surety, that he would faithfully collect and pay over such tax ; and thereupon

the defendants, *Haughton* as principal, and *Burrell Thompson* as surety, executed to the select-men of the town, (naming them) for the use of the town, their bond, in the penal sum of 2000 dollars, payable to such select-men and their successors in office ; to which was annexed a condition in these words : " That if the above-bounden *John W. Haughton* shall truly and faithfully collect and pay over all the state and town taxes legally put into his hands on the levy of said town for the year 1823, and save said town of *Montville* harmless from all expense that shall accrue on account of his not collecting and paying over as aforesaid, then this obligation to be null and void, else to remain in full force." The bond was signed by the obligors, and attested thus :   " Signed, *sealed* and delivered, in presence of *Robert Comstock, Nathaniel Parish.*" It was agreed, by the parties, that this instrument should be sealed, but by mistake and accident, no seal was thereto affixed.   *Haughton* proceeded to collect the tax ; and the whole of it was paid to him ; but he paid over to the town the sum of 400 dollars only.   He afterwards became insolvent, conveyed away his estate and removed out of the state.   About the time of his failure, he conveyed to *Thompson*, his surety, the other defendant, by mortgage, property sufficient to indemnify him from all loss, by reason of his suretyship.

The case was reserved for the advice of this Court as to what decree should be passed.

*Isham* and *H. Strong*, for the plaintiffs, contended, 1. That the tax voted in *November* 1823, on the list of 1823, in connexion with the rate-bill or apportionment of the tax made out and delivered to the collector in *August* 1824, was a legal tax. A tax may be laid by a town before the completion of the assessment ; but it must be completed before the rate bill is made out.   *Stat.* 454. *tit.* 100. *c.* 2. *s.* 14.   And this position cannot be overthrown, by any inference from the act of 1826, empowering towns, at their annual meetings, to grant taxes on the assessment list, which shall next thereafter be completed.   *Stat. vol.* 2. *p.* 95.   For, in the first place, this act may have been passed merely to remove doubts, and not to alter, but to confirm, the pre-existing law.   Secondly, the act may have been passed with reference to taxes granted in *October*, (as they may be) before the lists have been given in to the assessors. Thirdly, the act still leaves it optional with the town to grant

the tax on the list next to be completed, or on the one already completed.

<em>New-London,</em><br>July, 1829.

2. That if the tax was not legally laid, a rate-bill for such tax having been regularly made out and delivered to the collector, and the money having been actually collected by him, neither the collector nor his surety can withhold the money so collected. The bond expressly provides, (and it is a joint bond) that *Haughton* shall faithfully collect and pay over the money ; and his not paying over, is a breach of the bond. The warrant was regular on the face of it, and justified the collector in collecting the tax. Can he now pocket the money ? And *Thompson*, the surety, can have no better defence ; he having received a full indemnity from *Haughton*.

Montville<br><em>v.</em><br>Haughton.

3. That the omission of a seal, by mistake or accident, may be corrected in chancery. 2 *Swift's Dig.* 92. 96. *Crosby* v. *Middleton* & al. *Prec. Chan.* 309. *Skip* v. *Huey* & al. 3 *Atk.* 93. *Smith* v. *Chapman* & al. 4 *Conn. Rep.* 344. 346. *Watson* & al. v. *Wells*, 5 *Conn. Rep.* 468. *Peters* & al. v. *Goodrich*, 3 *Conn. Rep.* 146. *Wadsworth* v. *Wendell* & al. 5 *Johns. Chan. Rep.* 224. 228. In the case last cited, the mistake was the omission of *a seal* to a deed, which the Chancellor corrected, by treating the instrument as it was *intended* to be, not merely an agreement to convey, but an actual present conveyance.

*Gurley* and *J. W. Huntington*, contra, insisted, 1. That the laying of the tax in 1823 and the proceedings thereon, were not authorized by law. A town tax can be laid only on the assessment list *as made and corrected by the assessors and board of relief.* *Stat.* 450. *tit.* 100. *c.* 1. *s.* 14. By the 14th section of the act providing for the collection of taxes, (*p.*154.) the rate-bill is to be made out, "containing the proportion of each individual to pay according to the list *made and completed ;*" and thereupon a warrant is to be issued, commanding the collector to collect such tax *according to the grant.* To remedy some apprehended evil or inconvenience from the want of power to lay a tax in any other way, the legislature interfered, as to towns, in 1826, and as to ecclesiastical societies, in 1828, and enabled those communities to grant taxes on the assessment list which shall *next thereafter be completed* by the assessors and board of relief. *Stat. vol.* 2. *pp.* 95. 202. If

New-London, the same thing could be done before, why were these acts
July, 1829. passed ?

Montville
v.
Haughton.

There are good reasons why towns should not have the power of laying a tax before the list is completed. In the first place, they cannot know, until then, what tax to lay. Secondly, if they can lay a tax prospectively, they may lay it upon a list ten years in advance. This, with reference to our floating population, would be insufferable. And it is observable, that the legislature, when they conferred this power, in 1826 and 1828, virtually declared its exercise, without limitation, unsafe, by expressly limiting it to one year from the time of the vote.

2. That if the tax was lawfully granted, still this bond (admitting it to be such) cannot be enforced, because the collector is a public officer, not required by law to give bond, and the select-men are not authorized to take one. The moment a town has exercised its power of appointing a collector, he has a right to proceed to the collection of the tax. The law prescribes his duties. The town cannot superadd the burden of a bond. The bond given by the defendants, in this case, was purely *voluntary* on one part, and *oppressive* on the other. The law has provided other remedies for the town. *Stat.* 454. *tit.* 100. *c.* 2. *s.* 15. 16. Further, if the town could lawfully require a bond, yet in this case, the town did not act on the subject. The select-men acted without any authority from the town. It was no part of their duty, as select-men, to do what they did. Now, equity will not interfere to enforce a claim founded on no valuable or meritorious consideration ; but it will leave the parties where it finds them. *Com. Dig. tit.* Chancery. 4 D. 15. *Minturn* v. *Seymour*, 4 *Johns. Chan. Rep.* 497.

4. That if the plaintiffs are entitled to relief, they have adequate remedy at law. The instrument in question is valid and effectual to lay the foundation of a recovery for all that could have been recovered, if it had been originally sealed. If the plaintiffs had a right to take the instrument, there was a sufficient consideration to support it ; and *assumpsit* or debt on simple contract would lie. *Warren* v. *Lynch*, 5 *Johns. Rep.* 238. At any rate, it does not appear, that there was not a sufficient consideration ; and it is incumbent on the plaintiffs to shew, that they are without adequate remedy at law ; otherwise, chancery will not entertain jurisdiction.

5. That if a suit in chancery is sustainable, it should be
brought in the name of the select-men, and not by the town, the instrument in question being payable *to the select-men and their successors in office.*

DAGGETT, J. The defendants urge several objections to the bill. They will now be examined and disposed of.

I. It is said, this tax was illegal:—it could not have been laid on the list of 1823 ; for the list of that year was not, and could not by law be, perfected, till several months after the tax was laid. The statute ( *p.* 444—5.) provides, that the taxable inhabitants shall give in to the assessors, by the 20th of *October* in each year, a correct list of all their property subject to taxation. The assessors may add such assessments to the lists as they judge proper. The board of relief, in *January* following, may add to or reduce the list of any person. After this, the general list of each town (*p.* 449—450.) is to be transmitted to the comptroller, who, with the treasurer, in *March* following, may, on examination, add to or deduct therefrom such sums *per cent.* as they may judge will equalize the same, when compared with the valuation in other towns; and by the 10th of *April* thereafter, notify the clerks of the respective towns of such alterations. The town-clerk may then alter the list, within twenty days, and deduct from or add to it, according to the opinion of the comptroller and treasurer. This process with respect to the list, furnishes the ground for the supposition, that the tax was illegal ; for it does not appear, that the list was perfected when the tax was imposed. It does, however, appear, that the rate-bill was made out in *August* 1824, after the process for correcting the list was completed.

Stress, however, is laid on the 14th section of the act for the assessment of taxes, (*p.* 450.) which declares, in substance, that the assessment list of each town, as the same shall be made and corrected by the assessors and board of relief, shall be the rule of apportionment of all taxes. I believe, in some cases, the tax is laid on the list *last perfected ;* but I do not see the reason of it. Taxes are laid for the current expenses of the year. The basis of them should be, therefore, the taxable estate of the year. This idea is enforced, by the 9th section of the "act concerning towns." (*P.* 450.) This section provides, that the towns shall grant annual taxes on the assessment list made out according to law, sufficient to defray all

New-London, July, 1829.
—————
Montville
v.
Haughton.

lawful and necessary expense *incurred by them ;* and if they neglect or refuse, the select-men are authorized to assess the inhabitants, and make a rate-bill upon the list last completed. Here, the expression is definite ; because it is a tax for expense *already incurred.* If the tax was laid in *November* 1823, on the list of 1823, and the rate-bill made out immediately, there would be force in the argument ; but it is, in the case under consideration, laid on the list of 1823. The rate-bill or apportionment was made out in *August,* after the list was completed. In this view of the subject, the objection that the tax is illegal, fails.

It is still insisted, that as the legislature, in *May,* 1826, (*Stat. vol.* 2. *p.* 487.) enacted, that towns, at their annual meetings, might grant taxes on the assessment list, which should *next thereafter be completed by the assessors ;* and also, in *May* 1828, vested ecclesiastical societies with the same power ; it is to be inferred, that taxes could not be laid in this manner *before.* It would be unsafe to proceed upon this idea. The statute might have been made in affirmance of the existing usage, and to prevent all objection to it. If doubts existed, it was proper they should be removed.

Moreover, these taxes might have been granted at the annual town meetings in *October,* before the lists were presented to the assessors.

Hence, in my judgment, the tax was legally imposed ; and this opinion supersedes the necessity of examining a position taken at the bar, that if the tax was illegal, yet as the collector had received the amount, neither he nor his surety can allege this objection.

2. The defendants further insist, that the select-men should have been parties, as they were obligees in the instrument, and not the town. It is clear, that the town is the sole party in interest. The select-men were merely agents. If a loss is incurred, it must be borne by the town, and not by the select-men. The undisputed rule in equity, is, that all persons concerned, or who may be affected by the relief prayed for, ought to be parties. *Mitf.* 39.

3. The collector is not required to give a bond ; nor are the select-men authorized to take such bond. There is, indeed, no law directing that a bond shall be taken in such case ; nor is there any law against it. It is not illegal in its nature, nor founded upon any illegal consideration.

A collector is an authorized agent to collect moneys due the <span>New-London, July, 1829.</span> town. What forbids, then, the giving and taking a bond to secure the town? Surely, any corporation or individual em- Montville ploying a person to collect moneys for them, may take a bond *v.* Haughton. with surety for the faithful discharge of his duty. There is a good and sufficient consideration for such a contract; nor is it opposed to any rule of public policy.

These remarks dispose of another objection, suggested, by the counsel for the defendants, that this *voluntary* agreement ought not to be enforced, by a court of chancery. The obvious answer is, the instrument is not voluntary. It is founded upon a sufficient consideration. More especially, ought this agreement to be enforced, as the surety is fully indemnified against all loss.

4. The remaining objection is, that the plaintiffs have adequate remedy at law. It is one of the established powers of a court of equity to relieve against mistake and accident. It is found by the court, that the seal was omitted, in this case, by mere *mistake* and *accident*. If the plaintiffs might sue on this instrument at law, it does not follow, that they may not have relief in equity. The plaintiffs are entitled to a bond, the consideration of which cannot be enquired into at law. The remedy might not be adequate. In this stage of the proceedings, therefore, I incline against this objection.

The plaintiffs, then, are entitled to the relief sought, if it be competent to a court of chancery to afford it. That it is competent to relieve against mistakes in deeds, bonds, &c. is abundantly etablished in our own courts; and it is a settled rule in chancery. *Crosby* v. *Middleton* & al. *Prec. in Chan.* 309. *Skip.* v. *Huey* & al. 3 *Atk.* 93. *Wadsworth* v. *Wendell* & al. 5 *Johns. Chan. Rep.* 224.—a case identical with the present. *Smith* v. *Chapman* & al. 4 *Conn. Rep.* 344. 346. *Watson* & al. v. *Wells*, 5 *Conn. Rep.* 468. *Peters* & al. v. *Goodrich*, 3 *Conn. Rep.* 146.

I would advise the superior court to grant the relief sought.

The other Judges were of the same opinion.

Relief sought to be decreed.