SAVEDRA W. TAYLOR *v.* JAMES NICHOLS AND DANIEL MACOMBER.

*Action on receipt given for property attached. Recognizance of sheriff.*

An action upon a receipt given to an officer *de facto*, for property attached on mesne process is, *prima facie*, to be regarded as brought for the benefit of the creditor; and unless it appears that the officer alone is interested, it cannot be shown that he was not properly qualified to act in that capacity.

*Semble.* That the provision in the amendment of the constitution in 1850, in reference to the recognizance of sheriffs, contemplated a future enactment of the legislature upon the subject in conformity with that provision.

In this view there was in December, 1850, no provision for the sheriff giving a recognizance, unless the statute enacted previous to the amendment of the constitution remained in force.

The plaintiff was duly elected sheriff and acted as such for the year commencing December 1st, 1850, but he entered into a recognizance for the faithful discharge of his duties only before the first assistant judge of the county court. *Held*, that if that was not a compliance with all the requirements then in force, it was not such an omission of a clear and obvious requisite as to deprive him of the benefit of his official character.

TROVER against the defendants as receiptors of sundry articles of personal property, attached by the plaintiff as sheriff of the county of Chittenden, on the 3d day of February, 1851, on a writ of attachment in favor of Henry B. Hine against the defendant Nichols. Plea, the general issue; trial by the court, March Term, 1856, — PECK, J., presiding.

The attachment of the property by the plaintiff, and all the subsequent steps necessary by law to preserve the lien, if any was created by the attachment, including demand and refusal, were admitted. It was also admitted, that on the first Tuesday of September, 1850, the plaintiff was duly elected sheriff of Chittenden county; that on the 4th day of December, 1850, before one only of the assistant judges of Chittenden county court, the plaintiff with several sureties, became recognized in the sum of ten thousand dollars to the treasurer of said county, for the faithful discharge of the duties of said office of sheriff; and that before the attachment of said property, and the execution of said receipt, the plaintiff gave no other security whatever to said treasurer.

The plaintiff claimed no title to or interest in the property

embraced in said receipt, except such as he acquired by said attachment.

Upon these facts the defendants insisted that the plaintiff was not entitled to recover; but the court, *pro forma*, decided otherwise and. rendered judgment for the plaintiff for the amount of the execution in favor of Hine against Nichols with the interest thereon, to which decision the defendants excepted.

*E. R. Hard* and *J. French*, for the defendants.

The plaintiff, prior to the attachment, had not complied with the requirements of the constitution and laws concerning the qualification of sheriffs.

By the constitution as amended in January, 1850, " sheriffs before entering upon the duties of their office are required to give sufficient security, &c., before one of the judges of the supreme court, or the two assistant judges of the county court of their respective counties, in such manner and in such sums as shall be directed by the legislature; " Const. Vt. art. 22 of amendments.

As this provision of the constitution seems to point to some action of the legislature as necessary to give it effect, it is probable that, in the absence of such action of the legislature, the constitution in this respect might be treated as inoperative.

But whether this be so or not is wholly immaterial, for the reason that the amount of the security, and the manner of taking it, had been directed by the legislature before the commencement of the plaintiff's term of office; Comp. Stat. 96, sec. 2.

This statute at the time of its passage was not inconsistent with the constitution as it then stood, and was of course valid. And it was not in conflict with the constitution as amended, except in respect to the authority before whom the security should be taken. In all other respects it was not only *consistent* with the amended constitution, but was precisely what was required to bring the constitution into full operation.

The amendment of the constitution above recited did not therefore supersede or render unconstitutional that part of the statute relating to the *kind and amount* of security, but left it in full force until repealed. It was consequently unnecessary for the legisla-

ture to make any *subsequent* provisions upon that subject; *Pratt* v. *Allen*, 13 Conn. 119.

*Secondly.* But if in order to give full effect to said amendment, it was necessary that there should be a *subsequent* action of the legislature upon the subject, the act of 1850 (Comp. Stat. 96, sec. 3) is in effect a *re-enactment* of the whole of the previous statute, except so far as it was rendered invalid by the amendment of the constitution.

II. The plaintiff before making the attachment in question, not having given security before one of the judges of the supreme court, nor before the two assistant judges of the county court, cannot in a suit to which *he is a party* establish or resist a claim by virtue of his office; *Riddle* v. *County of Bedford*, 7 Serg. & R. 386; *Blake* v. *Sturtevant*, 12 N. H., 567; *Fowler* v. *Beebe*, 9 Mass. 231; *Cummings* v. *Clark*, 15 Vt. 653; *McGregor* v. *Balch*, 14 Vt. 428; *Moore* v. *Graves*, 3 N. H. 408; *Neale* v. *The Overseers*, 5 Watts 538; *Green* v. *Buck*, 23 Wend. 488; *The People* v. *Hopson*, 1 Denio 574; *Town of Plymouth* v. *Painter*, 17 Conn. 585; *Dow* v. *Hinesburgh*, 2 Aik. 24, per Hutchinson J.; *Adams* v. *Jackson*, 2 Aik. 145.

*Roberts & Chittenden*, for the plaintiff.

Article twenty-two of the amendments to the constitution was adopted in January, 1850. As this article repealed a kindred provision in the constitution of 1793, so it repealed necessarily sec. 2 of ch. 13, Comp. Stat. But sec. 2 being so repealed, sec. 3 necessarily fell for want of foundation. This recognizance was not taken according to the constitution, nor yet according to any act then in force. Let us admit that the case stands as if the sheriff had given no recognizance. The case then stands upon the naked provisions of the amended constitution requiring a certain recognizance, but without any declaration of the consequences which shall follow the neglect to execute the proper recognizance. And herein this is like the provisions of sec. 29 of the constitution, that every officer before he enters upon the execution of his office, shall take and subscribe a certain and prescribed oath. These provisions, without more, must be treated as merely directory.

The plaintiff's title to the office of sheriff came from his election; nor was either oath or bond essential to his character as sheriff; *Bowman* v. *Barnard*, 24 Vt. 355.

This neglect to take the oath or give the bond may have authorized an ouster upon *quo warranto*, but until then he was an officer *de facto*, and his acts as sheriff, as respects the public and third persons, were valid; *Ferris* v. *Smith*, 24 Vt. 27; *McGregor* v. *Balch et al.*, 14 Vt. 428; *Adams* v. *Jackson*, 2 Aik. 145; *People* v. *Collins*, 7 Johns. 549.

The limitation to this rule is as to such acts as are arbitrary and voluntary, and do not effect the public utility; *Ib.*

The sheriff in making the attachment was the agent of the plaintiff without personal interest therein, beyond the liability which attached to him as a legal agent. So, although this suit is in the name of the sheriff, it is but a mode in which the creditor seeks to recover his debt, and the same is for the creditor's benefit; for, if the attachment was valid as having been made by an officer *de facto*, the property attached could not be eloined without liability; if attached, the defendants became responsible to have it forthcoming when charged in execution. This obligation, although in terms to this plaintiff, is substantially to the creditor, it being for his ultimate benefit.

The opinion of the court was delivered by

REDFIELD, CH. J.    Two questions are made in the present case.

I. Is this action one in which it is competent for the defendants to defend upon the ground that the plaintiff, who made the attachment, was not properly qualified to act as sheriff at the time he made it, he being admitted to have been fully in the exercise of the office *de facto*.

It is true that the action is in the sheriff's name, and is one in which he is primarily interested, and one which could not have been brought in the name of the creditor. But nevertheless it is one in which the creditor is generally interested incidentally, and where the whole interest in fact may be in him. The attachment as it regarded the creditor and debtor was valid, and created a valid lien upon the property attached, and which so far as these parties are concerned, could not be defeated in any such manner

as here attempted. We think, therefore, that this court ought to regard this suit, *prima facie*, in the light in which practically the vast majority of such suits are brought, (that is, as one brought in the name of the officer, but for the ultimate benefit of the creditor.

And in this view we think it is not competent to defend the suit upon a ground which is confessedly available only against the interests of the sheriff, without at least showing that the suit is now prosecuted solely for his benefit.

II. The other question is one of more difficulty. There are a great many dicta of eminent judges, and some decisions going the length of depriving an officer *de facto* of his official protection upon the ground of some irregularity in his appointment or induction into office. And where the defect is substantial, I should not be inclined to question their entire soundness. And especially should I subscribe to this rule if the omission of the officer were intentional and willful.

But in the present case it is very questionable whether there was any informality even. It is only by a refinement of construction that we are enabled to say that the sheriff did not in fact comply with all the perfected requirements of the law.

The former constitution required the recognizance of the sheriff to be taken " before the first judge of the county court in such manner, and in such sum as shall be directed by the legislature." The act of the legislature, passed under this constitution in 1797, required the recognizance of the sheriff to be taken before the chief judge of the county court, or in case of his death or absence, before one of the assistant judges.

By the revised statutes of 1839, the recognizance of the sheriff is required to be taken " before the first judge of the county court," in the very words of the constitution then in force.

By the alteration of the constitution in 1850, in January, this recognizance is required to be taken before one of the judges of the supreme court, or the two assistant judges of the county court, in such manner and in such sums as *shall* be directed by the legislature."

At the October session, 1850, the legislature required the sheriff within ten days after the first day of December, to enter into the recognizance required by the revised statute, naming the section, and in default, enacted that the office should be considered vacant.

Now it is obvservable in the present case, that the plaintiff did comply literally with all the statutes then in force or then enacted. It is only by vacating a portion of those enactments, that we are enabled to arrive at the conclusion that the plaintiff did not do all that the law required, and in the manner required. This process of avoiding a portion of this statute is argued upon the ground that it is in conflict with the existing provisions of the constitution of the state. This, if it could be made out, would certainly be a remarkable ground of depriving a public officer of the protection of his official character, when he had complied with all the requirements of the statute in good faith, and verily believed himself fully invested with all the powers and functions of office, and when no proceedings had been taken to oust him during the term.

But it does not seem very certain that the constitution can fairly be applied to any of the existing enactments of the statute. The alteration of the constitution in 1850 being upon the identical matter, and in all respects a substitute, would doubtless supersede the old constitution upon that subject. But the mere repeal of the provision of the old constitution will not have the effect to repeal the statute. The statute is perfectly valid without any constitutional provision on the subject.

The new provision in the constitution of 1850, is certainly perspective in its terms, and unless it can be made to apply to the former statute to which it has no natural application whatever, and to which the language of the provision has no natural fitness to apply it, there will certainly be serious difficulty in saying that the sheriff could properly have entered into any recognizance before the two judges of the county court, or a judge of supreme court. This case stands quite different from the case cited from Connecticut Reports, where the provision in the statute was made to apply to the constitution prospectively, in anticipation of its coming in force, and upon the condition that it should be adopted. Here there is no pretense the statute was intended to meet the constitution, as it was made long before the provision in the constitution was thought of, and in express reference to another constitutional provision. And certainly the constitution seems to contemplate a future enactment of the statute, and one conforming to the constitution, which the existing statute certainly did not.

In this view of the case there either was no provision for the sheriff to give recognizance, or else the former statute remained in force.

And there is nothing in the constitution to hinder the legislature from requiring more security of sheriffs, and different from that specified in the constitution. There is no express or implied prohibition upon the legislature in this respect. The constitution is merely directory in regard to the form of taking security by way of recognizance required by act of the legislature, thereafter passed.

There are no words and no implication excluding other security, or even other forms of recognizance; and unless this be so, we cannot deem even a future act of the legislature, requiring security of sheriffs in other modes, to be unconstitutional.

But if we were disposed to force the application of the existing constitution to a statute passed long before it came into existence, and possibly a court might be justified in doing this to uphold a recognizance taken in that view of the law, we certainly should not even then feel justified in allowing, as a consequence of such construction, those sheriffs who followed the statute without noticing its possible conflict with a subsequent constitutional provision, to be thereby deprived of their official character.

It is not the omission of some doubtful duty which will deprive the officer of the benefit of his official protection. It should be some clear and obvious qualification, and, as I think, a substantial one, the omission of which will thus deprive the officer of his protection.

It is very questionable, I think, whether an officer can be called upon to show that he took the official oath, in order to justify his acts in a suit where he is a party and solely interested, if he can show that he was properly elected or appointed to the office, and exercised its functions. We cannot imagine any possible advantage resulting from the taking of such oath. And as the requirement is mere form, that provision of the constitution would very properly be regarded as merely directory.

But in regard to the official bond the case is different. And it is no hardship to require the officer to comply with the requisitions of the law in good faith, before he is invested with his official

protection. But where the officer in all good faith executes his bond, and for any reason it proves inoperative, it would be a remarkable construction, after the official term had expired without ouster, to declare the officer liable for all his official acts, and to deprive him of the entire protection of his official character in all suits between himself and those with whom he has been compelled to deal. We may suppose the bond to want·a seal, or the recognizance not to name the sum by mere accident. It would be little less than absurd to declare the officer a mere intruder on that account.

Judgment affirmed.