State *v.* Bates et al.

STATE OF VERMONT *v.* H. M. BATES ET AL., AND BENJAMIN
W. DEAN *v.* H. M. BATES ET AL.

*Oath of Office. Principal and Surety. Official Bonds. State
Auditor. State Treasurer.*

An action of debt, (prior to the passage of the Act of 1861, G. S. 541, § 16)
upon the official bond of the state treasurer, executed "to the secretary of
the state and to his successors in office in behalf of the state of Vermont,"
must be in the name of the *obligee ;* or if he is out of office in the name of
his successor at the time the action is commenced—the power to sue on such
a bond being incident to his office, on the principle thát *pro tanto,* he is
indued with a corporate capacity.

Such a bond is an obligatory instrument upon the sureties, notwithstanding
the neglect of the treasurer, who had been duly elected, and acted as such
during his official year, to take the oath of office as required by the consti-
tution and laws of the state.

The sureties upon the official bond of the state treasurer, will not be relieved
from their obligation on the bond by the fact that the auditor of accounts
had reported in his official report that the treasurer had fully accounted for
all monies received by him as treasurer the previous year, when in fact he
had embezzled the state funds of the previous year, provided the auditor
acted in good faith in making his report.

DEBT upon a bond. Two actions of debt were commenced
and prosecuted against Henry M. Bates and his sureties upon
the official bonds of said Bates as treasurer of the state. One
action was in the name of the state of Vermont upon a bond
executed by said Bates as principal and the other defendants as
his sureties, and bearing date on the 14th day of October, A. D.
1859. The defendants filed a demurrer to the declaration. At
the hearing on the demurrer, March Term, Washington County
Court, KELLOGG, J., presiding, the court *pro forma,* sustained
the demurrer and adjudged the declaration to be insufficient.
To this decision and judgment the plaintiff excepted.

The second action was commenced and prosecuted by Benja-
min W. Dean as secretary of state, in behalf of the state, upon
a bond executed by said Bates as principal and the other defend-
ants as his sureties, and bearing date on the 8th day of October,
A. D. 1856. Each of the defendants filed pleas to the action,
but by agreement the second and third pleas of the defendant,

Henry Belknap, were treated as the several pleas of each of the defendants. To these pleas the plaintiff filed general demurrers. At the March Term, Washindton County Court, KELLOGG, J., presiding, the court *pro forma* overruled the demurrers and adjudged the pleas to be sufficient, and rendered judgment in favor of the defendants upon the pleas and demurrers. To this decision and judgment the plaintiff excepted.

Both cases involved the same questions and were argued at the General Term at Montpelier, in November, 1862. The substance of the bonds, and the pleadings are stated in the opinion of the court, which was delivered at the August Term, Washington County Supreme Court, 1863.

*Redfield & Gleason*, for the plaintiff in the action in the name of the state, claimed that the action was properly brought in the name of the state and cited, *State Treasurer* v. *Cross*, 9 Vt. 289 ; *Whitelaw* v. *Cohoon*, 1 D. Chip. 295 ; *Town of Arlington* v. *Hinds, ib.* 431 ; *Fairfax* v. *Soule*, 10 Vt. 154 ; *Hopkins* v. *Plainfield*, 7 Conn. 286 ; *Sumners* v. *Heart*, 2 N. H. 39, (Gil. Dig. 82.)

*Heaton & Reed*, for the plaintiff, in the action brought by the secretary of state.

It will not be denied that Bates was treasurer *de facto. People* v. *Collins*, 7 Johns. 549 ; *Adams* v. *Jackson*, 2 Aik. 145 ; *Brown* v. *Lunt*, 37 Me. 423 and cases cited. Where a person has acted in an official capacity he cannot deny the validity of his own appointment. *Bradford* v. *McIntosh*, 3 T. R. 632 p. 635 n. a ; *Berrymin* v. *Wise*, 4 T. R. 366 ; *Cross* v. *Kaye*, 6 T. R. 663 ; *Johnston* v. *Wilson et al.*, 2 N. H., WOODBURY, CH. J., p. 206. An officer *de facto* may be punished criminally for official misconduct. 2 Bish. Crim. Law, 328 ; *State* v. *McIntyre*, 3 Iredell 171–4 ; *State* v. *Sellars*, 7 Richardson 368, 372 ; *People* v. *Cook*, 4 Selden 67 ; *The King* v. *Holland*, 5 T. R. 607 p. 623 ; *State* v. *Maybury*, 3 Strobart 146. Bates' receipt of money was binding on the state, and his every official act valid. *Cavis* v. *Robertson*, 9 N. H. 579 ; *People* v. *White*, 24 Wend. 520. The

parties acting under his authority and using his process would be protected by it.   *Weeks* v *Ellis*, 2 Barb. 321.

It is the result of all the cases that the acts of officers *de facto* are always held valid, where the *rights* of *third persons* of *the public are concerned.*   And for every purpose and incident except to protect himself, where the officer is a party and claims or justifies by virtue of his office, the proceedings of an officer *de facto* receive the same consideration as those of an officer *de jure.*   *Courser* v. *Powers,* 34 Vt. 517 ;  (Am. Law Reg. March, 1862, p. 268.)   *The People* v *Cook,* 14 Barb. 259, *et passim.*

And it has been directly decided that the bonds of an officer *de facto* are valid as to himself and his sureties.   *Green* v. *Wardwell,* 17 Ill. 278 ;  *United States* v. *Maurice et al.,* 2 Brockenbrough C. C. R. p. 96 ;  *The Auditor* v. *Woodruff,* 2 Pike's 73 ; *Nichols* v. *Taylor,* 29 Vt. 104.

It was not the fault, neglect, or omission of duty, of any officer of the state, except Bates himself, that the oath was not taken and subscribed on the bond.

The bond was conditioned that Bates should well and faithfully perform all the duties and requirements of the office of treasurer according to law, and is any requirement more imperative than that of the oath ?   The signers of the bond then are estopped from taking any advantage by way of defence from a neglect they have themselves guaranteed the state against.

Belknap's third plea.   Good faith is required towards sureties and here there is no omission of it.   The plea *does not assert* that any fact *material* and *known,* was withheld from the sureties by any officer of the state.   This was necessary to discharge them from liability on the bond.   Barge on Suretyship, 219 ; 2 Story on Contracts, § 868, a. and notes (4th Ed.) ;  *Smith* v. *Bank of Scotland,* 1 Dow Parl. Cases 272 ;  *Railton* v. *Mathews,* 10 Clark & Fin. 935 ;  *North British Ins. Co.* v. *Lloyd,* 28 Eng. C. L. and Eq. R. 456.   For these last cases cited, see Story's Com. *supra.   Bryant* v *Crosby* 36 Me. 562 p. 571 ; *Franklin Bank* v. *Stevens,* 39 Me. 532 p. 539 ;  *Franklin Bank* v. *Cooper,* 36 Me. 179 ;  *Graves* v. *Tucker,* 10 Smedes & Marshall 9 ;  *People* v. *Russell,* 4 Wend. 570 ;  *Taylor* v. *Bank of*

*Kentucky*, 2 J. J. Marshall 564; *Pidcock* v. *Bishop*, 3 B. & C. 605. But this bond was prospective, and concealment as to a past defalcation would not have rendered this bond void as to future transactions. *United States* v. *Boyd et al.*, 5 Howard 29; *Franklin Bank* v. *Stevens*, 39 Me. p. 532.

As a demurrer reaches the declaration, we insist that the action is brought in the name of the proper party; and that the declaration is good according to all the precedents and cases. *Jansen* v. *Ostrander*, 1 Cow. 676; *Armine* v. *Spencer*, 4 Wend. 406; *Scott* v. *Ducker*, 2 Md. 284; *Pickering* v. *Pierson*, 6 N. H. 559.

*P. Dillingham*, for the defendants, in the action, State of Vermont *v.* Bates et al., cited upon the point that no action could be maintained, upon the bond declared on, in the name of the State, *Anderson* v. *Martindale*, 1 East 498; *Millard* v. *Baldwin*, 3 Gray 484; *Parker* v. *Colcord*, 2 N. H. 36–39; *Watson* v. *Cambridge*, 15 Mass. 287; *Arlington* v. *Hinds*, 1 D. Chip. 431; *Fairfax* v. *Sowles*, 10 Vt. 154; *Northampton* v. *Etwell*, 4 Gray 81.

KELLOGG, J. The first of these two cases is an action of debt in the name of the state of Vermont against Henry M. Bates and thirteen other defendants, on the official bond of the said Bates as treasurer of the state for the year 1859–1860, bearing date on the 14th of October, 1859, and executed by the said Bates as principal and by the other defendants as his sureties. The bond declared upon is a bond in the sum of one hundred thousand dollars " to Benjamin W. Dean, secretary of the state of Vermont, and to his successors in office in behalf of the state of Vermont." The writ in this case is dated on the 1st of November, 1860. The other case is an action of debt in the name of said Dean as secretary of the state against the said Bates and four other defendants, on the official bond of the said Bates as treasurer of the state for the year 1856—1857, bearing date on the 8th day of October, 1856, executed by the said Bates as principal and by the other defendants as his sureties, " to Charles W. Willard, secretary of the state of Vermont, or to his successors in office, in behalf of the state of Vermont," and for the same penal sum of

State *v.* Bates et al.

one hundred thousand dollars.    The writ in this case bears date on the 3d of November, 1860.    At the time of the date and execution of the last mentioned bond, the said Willard was the secretary of state of this state, and, at the time of the commencement of this suit thereon, the said Dean was his successor in that office.    Each of these bonds was executed pursuant to the requirements of the constitution (Article 22 of the Amendments, C. S. p. 47,) and the provisions of the statute, (C. S. p. 78, § 1,) and the first and principal question which is made in each of these suits is, whether the action is to be prosecuted in the name of the state, for whose use the bonds were executed, or in the name of the secretary of state to whom 'they were respectively taken, or his successor in that office for the time being.    Prior to the passage of the Act of 1861, (Acts of 1861, No. 31, and G. S. p. 541 § 16,) which provided that all actions in which the state is the party in interest shall hereafter be commenced in the name of the state, there was no statute provision bearing on this question, and that Act having been passed since these suits were commenced, it cannot have any effect upon the decision of this question.    As the two cases have been argued together, though by different counsel, and as the decision of this principal question so vitally affects each suit, it is proper that the cases should be considered and disposed of together.

The first constitutional provision in respect to the treasurer's bond required that officer to give " sufficient security to the secretary of state, in behalf of the general assembly."    (Sec. 27 of the constitution, C. S. p. 39.)    This provision was contained in the first constitution, and remained in force until it was superceded in 1850, by the adoption of the 22d Article of the Amendments, above referred to, which required the " sufficient security" to be given to the secretary of state, in behalf of the State of Vermont."    The statute (C. S. p. 78,  § 1,) fixed the amonnt of the " sufficient security," to be given by the treasurer at the sum of one hundred thousand dollars, and provided that it should be given by a bond with such sureties as should be approved by the governor, and that the treasurer should take the oath of office, and that a certificate of the taking of this oath should be

indorsed on the bond, before entering upon the duties of his office,—and by the next section (§ 2,) it is provided that the bond should be in the form prescribed by law, (C. S. p. 621, form 34,) and should be kept by the secretary of state, and recorded in his office. These provisions of the statute were passed and included in the Revised Statutes of 1839, and were substituted in the place of the provisions of the Act of 1797, upon the same subject, (Slade's C. S., p. 550, § 15,) which had remained in force up to that time ; and there is no difference in substance between the provisions of the Act of 1797 and those of the present statute in this respect. It is perfectly clear that the statute provisions were intended, not to interfere with the requirements of the constitution on the same subject matter, but to furnish a mode of carrying those requirements into effect ; and the bonds now in suit appear to have been executed in accordance both with the statute provisions and the requirements of the constitution which were in force when those instruments were executed.

There is a difference in the remedies upon simple contracts and contracts or obligations · under seal or specialties ; and a distinction between simple contracts and specialties in character, requisites, and incidents. The prevailing English rule in the case of simple contracts seems to be that a plaintiff must be the person from whom the consideration of the contract actually moved, and that a stranger to the consideration cannot sue on the contract, although he was the person intended to be bene-fitted by it, and that there must be a privity of contract between the plaintiff and defendant in order to render the defendant liable to an action by the plaintiff on the contract. But there are many American cases in which it has been held that if one person makes a promise to another, for the benefit of a third, such third person may maintain an action upon the promise, though the consideration does not move from him. *Mellen* v. *Whipple*, 1 Gray 317. In the case of deeds and other specialties, how-ever, the general rule has been that the action must be brought by and in the name of a person who is a party to the instrument, and that a third person, a stranger to the deed, cannot sue thereon,

although the covenant be made expressly for his advantage. Chitty on Contracts, 10th Amer. ed., p. 61–66.   In the case of *Inhabitants of Northampton* v. *Etwell*, 4 Gray 81, it was held that on a bond made to the commonwealth, "for the use of the town of Northampton," no action lies by the town, although the forfeitures belong to the town by statute, on the ground that the whole legal title to maintain the action consisted in the deed by which the defendant bound himself to the commonwealth, and that the right of action on a sealed instrument belonged to the party having the legal interest.    At common law, the legal interest in an independent contract under seal resides in the obligee or the person to whom it has been given for the benefit of another.    Hammond on Parties 14.    *Offley* v. *Ward*, 1 Lev. 235.    *Lord Southampton* v. *Brown*, 6 B. & C., 718,—13 E. C. L. 303, S. C.    Perhaps a more liberal rule ought to prevail in respect to official bonds, when taken to an obligee who is a mere trustee, than in respect to any other class of specialties; but it is to be noted that at the time when the first of these suits was commenced, there was a statute provision authorizing actions to be brought in the name of the town, when given by law to town officers; and that by recent statutes a similar provision has been made since that time in the case of actions in favor of the county, where the county is the party in interest, and also in favor of the state, where the state is the party in interest.    C. S. p. 474, § 14.    Acts of 1861, No. 31.    General Statutes of 1863, p. 541, § 16..    As there can be no question made in respect to the right of the Secretary of State to whom the bond was taken to maintain an action thereon while in office, we are inclined to adhere to the general rule of the common law, and to hold that, although the bonds in question were given "in behalf of the state," the action must be in the name of the obligee.    This conclusion is adopted with some hesitation, as a portion of the court are inclined to the opinion that the action might be brought either way,—in the name of the obligee or of the state,—and there are very respectable authorities to sustain an action upon this bond in the name of the state.    *Hopkins* v. *Plainfield*, 7 Conn.

286 ; *Montville* v. *Houghton*, 7 Conn. 543 ; *Dyer* v. *Covington Township*, 28 Penn. State, 186.

The question then arises, whether an action can be sustained on an official bond of the Treasurer of the State in the name of a successor in the office of Secretary of State, who may hold that office when the action is commenced. The Secretary of State in taking the official bond of the Treasurer acts as a mere trustee or depositary in behalf of the state, and has no personal or private interest whatever arising from the obligations of the bond. His power over the bond ceases when his term of office expires, and is transferred to his successor in office, and all his duties in respect to the taking, recording, and keeping of it are purely official. These considerations would seem to be quite sufficient to show that it was intended by the framers of the constitution that the Secretary of State should be considered as clothed with qualified corporate powers in respect to the remedy for a breach of the conditions of the bond, and that the power to sue should be treated as incident to his office, on the principle that, *pro tanto,* he is endued with a corporate capacity. It not necessary to say that he is a sole corporation, to uphold an action in the name his successor, though we consider him, when acting as a trustee for the benefit of the state, as having, for the specific purpose of discharging the duties imposed on his office, that legal perpetuity which belongs to the office itself, the enjoyment of which is one of the incidents belonging to corporations. This rule of decision is, as we think, entirely in harmony with the spirit and reason of the adjudged cases. It is stated in Kyd on .Corporations, p. 29 to 32, that corporations sole are of two kinds, the one when the person has the corporate capacity for his own benefit, as in the case of the king, a bishop, or a parson ; the other when he acts only for the benefit of others, as in the case of the chamberlain of the city of London, who may take a recognizance to himself and his successors, in trust for the orphans. So in Fulwood's Case, 4 Co. 65, a recognizance to the chamberlain of London and his successors was held good upon a custom, for that he was a corporation by custom, and the same custom which created

him, made him a corporation in succession *to this special purpose;* whereas a bishop, parson &c., could only take an obligation in their private, and not in their corporate capacity. But, as is stated by SAVAGE, CH. J., in *Jansen v. Ostrander,* 1 Cow. 670, the true reason of the distinction between the case of the bishop and the chamberlain is not the custom alleged, but the fact that the former takes obligations in his private capacity, and the latter in his corporate capacity. In this case of *Jansen v. Ostran-der,* it was held that the supervisor of a town, in discharging his duties as such, acts in his official capacity, and is, *pro tanto* or *quasi* a corporation, and has the capacity of suing or being sued as a *quasi* sole corporation so far as his trust is concerned,— that the right to sue is incident to his office, and passes to his successor,—and that, within this rule, the successor of a supervisor who has taken a collector's bond under the statute may sue upon it in his own name. This rule of decision is maintained in that case by able and satisfactory opinions, and is, in our our judgment, in entire harmony with the rules of the common law. We find no difficulty in adopting the conclusion that the Secretary of State had the capacity of suing, as an incident and in the right of his office, upon the official bond of the Treasurer, and that this capacity passed with his office to his successor. We accordingly find no error in bringing the suit on the official bond of the late State Treasurer for the year 1856–1857 in the name of Secretary Dean as the successor in office of Secretary Willard to whom that bond was given. We do not regard an official bond of this character as standing upon the same footing with one to a private citizen, but consider the Secretary of State as acting in his public or official character, rather than in his natural capacity, in respect to such bonds; and we treat the power to sue upon these bonds as incident to and passing with his office. Without this construction of his power and capacity, the remedy upon such bonds might be subject to serious embarrassments, if not rendered wholly unavailing.

A question is made by the second plea of Perley Belknap, one of the defendants in the action in favor of Secretary Dean upon the bond for the year 1856–1857 in respect to the omission or

State *v.* Bates et al.

neglect of the late Treasurer Bates to.take the oath of office for that year,—it being alleged that he did not, before entering upon the duties of his office, nor at any time after he was elected Treasurer for that year, take the official oath or affirmation to faithfully discharge the duties of that office as required by the constitution and laws of the state, and that no certificate of the taking of such oath or affirmation was indorsed on said bond as required by law, and that the said Bates acted as Treasurer of the State during the whole of that official year without having been sworn or affirmed to the faithful performance of the duties of said office, without the knowledge or consent of the said Belknap, and that the said Belknap signed and executed the said bond relying and acting on the belief that all the legal obligations for the faithful discharge of the duties of the said office required by law would be imposed on the said Bates. This plea, by agreement, is to be treated as the several plea of each of the defendants, and it was demurred to by the plaintiff. The constitution (§ 29,) provides that every officer, whether judicial, executive, or military, in authority under this state, before he enters upon the execution of his office, shall take and subscribe a prescribed oath or affirmation of office ; and also a prescribed oath or affirmation of allegiance, unless he shall produce evidence that he has previously taken this last oath or affirmation. The Treasurer of the State clearly comes within this provision, and the statute which was in force when these bonds were executed provided not only that he should take the oath of office, but that a certificate of the oath should be indorsed upon his official bond, before he entered upon the duties of his office. Comp. Stat. p. 78, § 1. The plea admits that, during the official year for which this bond was given, Bates was Treasurer *de facto*, and it is a settled principle that, as he came into that office by color of title, his acts, as an officer *de facto*, were valid so far as they concerned the public or the rights of third persons, to the same extent that they would have been if he had been an officer *de jure. Adams* v. *Jackson*, 2 Aik. 145. *People* v. *Collins*, 7 John. 549. A person who serves as an officer, and claims to be one, cannot deny the validity of his own

appointment, and, whether an officer *de jure* or *de facto*, he is liable to be punished criminally for misconduct. 2 Bishop on Criminal Law, § 328. In *The People* v. *Cook*, 4 Seld. (N. Y.) 67, it was held that a challenge voter swearing falsely before a *de facto* board of inspectors is liable to the same punishment as if the oath had been administered by inspectors *de jure*. It was the duty of the Treasurer, after his election was declared, to execute his official bond with such sureties as should be approved by the Governor, and then to take the oath of office. This primary duty is cast upon the Treasurer alone, and one of the conditions of the bond is, that he " shall well and faithfully " perform all and singular the other duties and requirements" of his office, " according to law," including in this expression every duty and requirement not specifically mentioned in the bond. The omission or neglect of Bates to take the oath of office was a breach of a duty which the constitution and the law had cast upon him, and it was not the fault, neglect, or omission of duty on the part of any officer of the state, except Bates himself, that he did not take and subscribe the oath. When the bond is approved by the Governor, his duty in connection with it is fully discharged, and the duty of the Secretary of State is limited to the keeping and recording of it, when it is delivered to him. Beyond this, he has no duty or control over the matter. We therefore, think that the plea does not set forth any such negligence on the part of the other state authorities as would exonerate the sureties from liability, and that the omission or neglect of Bates to take the oath or affirmation of office cannot be taken advantage of by the sureties as a defence. The case of *Courser.* v. *Powers*, 34 Vt. 517, which was very strongly relied upon by the counsel for the defendants as upholding their position upon this point, only holds that a justice of the peace, in an action against himself for an arrest under a warrant issued by him, cannot justify, if he had not, before such arrest, taken the oath of office as prescribed by the constitution of the state ; and so far is it from impugning the principle that, in respect to third persons and the public, the acts of officers *de facto* are valid, that it expressly concedes that the defendant " having been duly elected

and commissioned as a justice of the peace, held the office under such an apparent title, that if he assented to act as such, he was undoubtedly a justice *de facto;* so that as to third persons his acts must be regarded as legal, and could not be brought in question." That case is entirely consistent with what we regard as a principle supported by the whole current of modern authorities, that the acts of an officer *de facto* are always held valid so far as they may affect the rights of third persons or the public, and that they should receive the same consideration as those of an officer *de jure,* except when he is a party and claims or justifies by virtue of his office, in which case he can protect himself only by showing that he is an officer *de jure.* *Adams* v. *Jackson,* 2 Aik. 145; *Taylor* v. *Nichols et al.,* 29 Vt. 104.

The third plea in bar of the defendant Belknap, which, by agreement is to be treated as the several plea of each of the sureties, raises a question in respect to the effect of the annual settlements made with the Treasurer, Bates, by the Auditor of Accounts as required by the statute, on the validity of the bond executed for the year 1856–1857. This plea in substance avers that Bates held the office of Treasurer of the State for the two previous years; and that, on the annual settlement made with him by the Auditor for each year, it was found and duly reported by the Auditor to the Governor and the Legislature that Bates had fully accounted for all moneys received by him as Treasurer, whereas in fact he embezzled moneys of the state received by him as such Treasurer in each of those years, and this fact was not known to said Belknap when he signed said bond; and it is further averred by said Belknap that, acting upon the belief that the Auditor's reports of the said settlements with Bates as Treasurer, were true and correct, he signed the bond declared on as surety for said Bates; and that, had it not been for said statements and reports, and his belief that they were true, he should not have signed the said bond. It is a sufficient answer to this plea, that it does not set up any want of good faith, or any negligence, or want of due care, on the part of any state officer in respect to the making of these annual settlements, neither does it aver that any material fact known to any state officer was withheld

State *v.* Bates et al.

or concealed from the sureties on the bond. It is not averred by the plea that the defendant, Belknap, had not the same knowledge or information which the proper officers of the state had upon the subject matter ; and, in the absence of this averment, we may assume that the skill with which the previous embezzlement was concealed from the sureties was of equal efficacy in baffling the scrutiny of the Auditor of Accounts, when he was making his annual settlement of the account of the late State Treasurer. This plea proceeds on the ground that a successful concealment by the principal of his past embezzlement should exonerate his sureties on a bond having no reference to past defalcations, but designed to be wholly prospective and applicable to future transactions. Nothing short of an act on the part of the state officers indicating a want of good faith towards the sureties such as the concealment of the truth, or the suggestion of what was false, in respect to a material fact, should be allowed to effect the validity of their obligations on the bond, and this consideration is decisive against the sufficiency of this plea.

In the suit in the name of the State of Vermont against the signers of the official bond of the late State Treasurer for the year 1859–1860, the judgment of the county court, by which the demurrer to the declaration was sustained *pro forma*, and the declaration was adjudged to be insufficient, is *affirmed.* In the other suit, in the name of Benjamin W. Deane, as Secretary of State, against the signers of the bond of the late State Treasurer for the year 1856–1857, the judgment of the county court, by which the plaintiff's demurrers to the second and third pleas of the defendant Belknap were *pro forma* over-ruled, and the said pleas were adjudged sufficient, and judgment rendered thereon in favor of the defendants, is *reversed;* and judgment is rendered that the said demurrers be allowed, and the said pleas be adjudged to be insufficient, and the case is to be remanded to the county court for trial upon the plea of the general issue.