### ELIAS MOSS *v.* WILMARTH HINDS.

*Evidence.     Grand list.     School district tax.*

Where by the pleadings it is admitted that certain persons were at a particular time, the prudential committee of a school district, testimony to show that they were not, is inadmissible; but testimony, showing the identity of particular persons with those named in the pleadings, is proper.

The grand list, which by the act of 1842 (Comp. Stat. ch. 80, sec. 50,) was required to be completed and returned to the town clerk's office on or before the first Monday in December, became and was, *on* that day, the existing grand list upon which a tax voted on that day was required to be assessed.

A school district tax on that list could be voted on the first Monday of December by a school district meeting which had been adjourned to that day from a previous one.

Under the law as it was in 1844, it was the duty of the prudential committee of a school district in assessing a tax, to assess all the lands situated in the district which were set in the grand list of the town, though they were not designated in the list in the district, and to exclude from their assessment such lands as were not in the district, though they were incorrectly designated as being there. But could not include in their assessment lands within the district which were wholly omitted in the list.

Rule for the apportionment of the appraised value of lands which were situated partly within and partly without the district.

. TRESPASS for taking a pair of oxen and seven cows. The defendant plead the general issue, and three special pleas justifying the taking as collector of a school district. The pleas averred the organization and existence of school district No. 8 in Addison;

the application and warning for, and the holding of a school district meeting on the 22d of October, 1844; the adjournment of the meeting from time to time to the first Monday, being the second day of December, 1844; that at that adjourned meeting a tax was voted; that "Aaron Hinds, William T. Whitford and Alanson Norton, who were then the prudential committee of said district, did, as such committee and in pursuance of said vote granting said tax, and agreeably thereto, duly and legally assess said tax," &c., and make a tax bill of the same; that the plaintiff was liable to be, and was duly assessed in said tax bill, which with a warrant for its collection was delivered to the defendant, who was the collector of said district, and that he as such collector, upon the refusal of the plaintiff to pay his tax, took said oxen and cows, &c. To this plea the plaintiff replied, that the supposed tax "was not legally and duly assessed by the then prudential committee of said school district upon the lists of said district as averred in said pleas," and upon this and the general issue a trial by jury was had at the December Term, 1856, — KITTRIDGE, J., presiding.

The plaintiff having shown such a right to said cows and oxen as would entitle him to maintain his action, and also the taking and value of the same, rested his case.

The defendant, among other witnesses, introduced one Aaron Hinds, who testified that he and William T. Whitford and Alanson Norton assessed the tax in school district No. 8 in Addison, on the 3d day of December, 1844, being the same tax mentioned in the defendant's plea and justification, and that he was the person mentioned in the defendant's plea as one of the prudential committee, and for the purpose of proving this the defendant put the following question: "Were you, in December, 1844, one of the prudential committee of district No. 8 in Addison, and one of the persons named in the defendant's plea as one of that committee?" To this question the plaintiff objected on the ground that the fact that he was a member of that committee should be shown by the records of the district, and not by parol. The court overruled the objection, and the question was answered in the affirmative. The defendant then offered in evidence the grand list of the town of Addison, which was returned completed to the town clerk's office by the listers of that town on the 12th of November, 1844. Upon

this list the listers had set opposite to the real estate by them appraised, the number of the school district in which it was situated.

The evidence of the defendant tended to prove that after the tax was voted on the first Monday (being .the second day of December, 1844), the said Whitford, Hinds and Norton took said grand list and made up the tax in question upon it. In doing this, they took said grand list as the guide and basis of their proceedings, so far as the list of real estate was concerned, except in the particulars hereinafter stated. The evidence tended to prove that Samuel Hitt, Judson Hard, Allen Smith and Stickles and Pollard, all of whom resided out of district No. 8, owned real estate situated within said district, which the listers had appraised and set in the list together with other real estate in said town, but had not designated any part thereof as being in district No. 8 ; that said committee examined or knew about such real estate which was in said district, ascertained the number of acres thereof from the owners respectively, and estimated its value according to their best judgment, by a comparison of the quantity in said district belonging to each individual with the whole quantity appraised against such individual in town, having reference to the price set upon the whole thereof by the listers, and there was no evidence tending to show that such assessment was not fairly and justly made, according to the value of the real estate thus situated, and belonging to said Hard, Stickles and Pollard, Smith and Hitt, and it appeared that the aggregate amount of taxes thus assessed in said tax bill against the persons last named was twenty-five dollars and sixty-two cents, and that the same was voluntarily paid by them. The defendant's evidence tended further to prove that a small part of the real estate of Jared Bishop was not situated in district No. 8, although it was all designated by the listers as being situated therein in said grand list, and that said committee ascertained in the same manner as is above specified, the amount and relative value of that which lay out of said district, and excluded it from their assessment, thereby making his tax about two dollars less than it would otherwise have been. The defendant's evidence tended further to prove that there was situated in said district about seven acres of land owned by one Josiah Southard, who resided in an

adjoining town, which was not set in said grand list to any person, and that said committee did not assess a tax upon this land, although they knew that said Southard owned said land, and that it was situated in said district.

It appeared that in the grand list of 1844, one Vanderhoof had set to him about twenty-three acres of land, designated in the list as being in district No. 8, and that no tax was assessed against him by said committee, and the defendant offered testimony tending to prove that said committee did not assess a tax against him for the reason that they believed that he owned no land in said district, and that the land set to him was not owned by him, and was also set in the same list to one Norton, who did own it. This testimony was objected to by the plaintiff, but was admitted by the court.

The defendant introduced no records or copy of records of said district, and the plaintiff insisted that the justification of the defendant was not made out without proving by record evidence that said Whitford, Hinds and Norton were the *then* prudential committee of said district, but the court decided that from the state of the pleading in the case, the evidence of the defendant on that point was sufficient without producing the record.

The plaintiff then offered in evidence what purported to be a certified copy of the record of said district No. 8, for the purpose of showing that said Whitford, Hinds and Norton were not, when the tax in question was voted or made up, the prudential committee of said district, but that three other persons were, and he also offered in evidence the original book of records of the district for the purpose of showing the same fact, both of which were objected to and excluded by the court.

It was conceded on the trial, that the plaintiff had no list in the town of Addison prior to the list for 1844, which was returned to the town clerk's office on the 13th day of November, 1844.

The court instructed the jury that the designation made by the listers of the district in which the real estate was situated was not conclusive upon the prudential committee, and that it was competent for that committee to disregard it as to lands known by them to lie in district No. 8, which were otherwise designated by the listers; that if they found that the grand list was returned com-

pleted to the town clerk's office on or before the first Monday, or second day of December, 1844, that although the tax was voted on that day, if in fact it was assessed on the third day of the same December, the tax would not for that reason be illegal; that if they found that there was in fact land in the district, to wit, seven acres or thereabouts said to belong to Josiah Southard, upon which the committee assessed no tax, and which was not in fact put into the list of the town by the listers for the year 1844, and made no part of that list, although the committee knew of the existence of such lands in the district, which was not listed, these facts would not render the tax void; that if they found that the committee, in making up the tax under the vote of the district, did in any case when the list of any particular person embraced in part land lying in the district, and also out of the district, and no distinction to that effect was made by the listers, and no designation was made of the district No. 8, in which such part or parts of the lands were situated, did exercise a sound discretion and judgment in fixing the relative value of that part of the land lying within the district, and did, after ascertaining the quantity, estimate the value of the land within the district by a reference to the value of the land out of it, and also to the aggregate list of the tax so made by them, the tax would in that respect be legal; but if in assessing the value of the land in the district, the committee assessed it without reference to the land out of the district, or without reference to the aggregate list, and thus made a new list of the land in the district, such an estimate or assessment would be unwarrantable, and the tax would be illegal and no justification to the defendant; that if they found that the committee omitted to assess a tax against a person upon a parcel of land set to him in the list, and designated as being in the district on account of its being *also* set in the list to another person, and who was the actual owner of it, and that the land was taxed against said last named person, and that the former person did not in fact own any land in said district on the first of April, such omission by the committee under the circumstances would not vitiate the assessment.

The jury returned a verdict for the defendant. To the decisions of the court above detailed, and to their charge the plaintiff excepted.

*Roberts & Chittenden* and *O. Seymour*, for the plaintiff.

I. At the time the tax was voted the grand list upon which it was made up was not in force for the purposes of taxation. The listers had the right to deposit the new list for 1844, at any time *on* the first Monday in December, and, at any time *during* that day, could alter or amend it. It did not become a perfected or completed list so long as it was subject to their control. The list of 1843, then, was the only one upon which this tax which was voted *on* that day could be legally assessed; *Downing* v. *Roberts*, 21 Vt. 441.

That two lists cannot be in force at the same time is established by the following authorities; *Downing* v. *Roberts*, 21 Vt.; *Collamer* v. *Drury*, 16 Vt.; and that the tax must be assessed upon the list which was in force when it was voted, and if made on another list, is void; see *Waters* v. *Davies*, 4 Vt. 61; *Collamer* v. *Drury*, 16 Vt. 574.

II. The designation of the listers was conclusive upon the committee and they had no right to disregard it and make up a new list; *Fairbanks & Co.* v. *Kittridge et al.*, 24 Vt. 13; *School Dist. No. 1* v. *Kittridge*, 27 Vt. 650.

But if the action of the listers is not conclusive and the committee are at liberty to disregard it, it would seem to follow that the committee must include in *their* assessment all lands in the district, and the case shows that they purposely omitted lands of Southard. This omission is fatal to the tax; *Adams* v. *Hyde*, 27 Vt. 221.

III. In the averment that the tax was "not duly and legally assessed" is involved the *authority* of the body assessing it. In this view it was incumbent on the defendant to prove that those who assessed it were the then prudential committee; and much more was it error to exclude the evidence of the plaintiff that they were not the committee, but that certain others were; *Bates* v. *Hazleton*, 1 Vt. 84.

*P. C. Tucker* and *J. Pierpoint*, for the defendant.

The opinion of the court was delivered, at the circuit session in June, by

ISHAM, J.   The pleadings in this case raise the single inquiry

14

whether the tax mentioned in the several pleas in bar was legally assessed. On a former hearing of this case it was held that to assess a tax was to fix and ascertain, in due proportion, the specific amount to be paid by each person liable to pay taxes; and that in the assessment of a school district tax, the amount was to be ascertained by the prudential committee from the vote of the district and the grand list. The averments in the pleas in bar, which are not traversed, are admitted to be true. It is, therefore, admitted upon the face of this record that Aaron Hinds, William T. Whitford and Alanson Norton were the then prudential committee of the district; that a vote laying a tax on the district was passed on the 2d of December, 1844, and that the assessment was made upon that vote and the grand list of that year. It was clearly incompetent for the plaintiff to introduce any evidence whatever showing that no such persons were at that time the prudential committee of the district, for no averment in the pleas can be disproved which is not traversed or denied by the replication. But whether the persons named in the pleas were the *same persons* who assessed the tax, was a proper inquiry, as that was a question of identity; and for that purpose the testimony of Aaron Hinds, proving that identity, was unobjectionable. We think, also, the tax in this instance was properly assessed on the grand list of 1844. The act of 1842, sec. 11 (Comp. Stat. 460, sec. 50), requires *the grand list to be completed and returned as finished, to the office of the town clerk, on or before the first Monday in December in each year;* so that the vote of the district laying this tax was passed on the same day the act required the grand list to be filed with the town clerk as finished. There can be no fraction of a day on this subject, nor can there be two grand lists in existence at the same time; and when the act provides that the grand list shall be filed *on or before* a given day, it was intended, we think, that on that day the new list should come into existence and be the basis of taxation on and after that period for the year ensuing. The words *on or before* are not, in this instance, to be considered as synonimous with the words *from and after.* As a necessary consequence no assessment could have been made on the grand list of 1843, as that expired and became of no effect on the day previous to the vote of this tax. It is well settled in this state, that the assessment of a tax

must be made on the list in legal existence at the time of the vote, and if made on any other the tax is wholly void; *Collamer* v. *Drury*, 16 Vt. 574; *Waters* v. *Daines*, 4 Vt. 601. The district clearly had the right to adjourn their meetings to the time when the vote was passed, and surely we are not to judge of their motives in doing so, nor can their motives affect the legality of that assessment.

It is insisted, however, that the tax is rendered illegal by the irregular proceedings of the prudential committee in making their assessment on the real estate within the district. It appears from the case that there were several persons residing out of the district who owned real estate within it which was *set in the grand list of the town* and duly appraised; but that part of the land *which lay within the district was not designated* in the grand list by the listers. The statute provides that " all real estate shall be taxed in the district in which it is situated, and that the committee shall assess the tax on the lists of the inhabitants of such district, *and on lands in such district belonging to persons living out of it.*" It is also provided that " the listers shall designate in the grand list the school district in which all real estate is situated," but no provision is made for a separate valuation of the land by this act. The object of the act was to provide a certain and permanent basis on which the state, town and school district taxes could be assessed, and when completed and filed with the town clerk, it is not the subject of alteration or correction by either listers, selectmen or school district committee. If the grand list of 1844 was conclusive upon the prudential committee in the assessment of this tax, and if they were not permitted to assess lands which the listers had neglected to designate in the grand list as being in that district it is obvious that all the land within that district which was owned by those persons living without the same, could not be included in that assessment. That would be a direct violation of the statute, which provides that all real estate shall be taxed in the district in which it is situated. Under those circumstances it was the duty of the prudential committee to include those lands in their assessment of this tax; and in making that assessment and apportionment of its value, we perceive no objections to the rule adopted by the court in their charge to the jury, and which the jury have found

was pursued by the committee. The case of *Adams* v. *Hyde*, 27 Vt. 221, seems to be directly in point both as to the duty of the prudential committee in assessing those lands, and as to the mode or rule of assessment adopted by the court. Under the acts of 1847 and 1849 (Comp. Stat. 457, secs. 35, 36, 37), it is probable a different rule would be adopted, and the grand list held to be the conclusive guide, as power is given to the district, and the manner is prescribed by which the grand list can be corrected, and a valuation of the land in each district made, so that all the provisions of the act can be carried into effect by an assessment of the tax as the property of the district stands on the grand list ; *Fairbanks & Co.* v. *Kittridge,* 24 Vt. 12 ; *School Dist.* v. *Kittridge,* 27 Vt. 651. In relation to this matter it is also to be observed that by that assessment the sum of twenty-five dollars and sixty-two cents was raised and voluntarily paid by those persons residing out of the district. Its effect was to lessen the taxes assessed against the plaintiff. He has, therefore, not been injured by the assessment of those lands. In such case there is no propriety in his setting up that matter in avoidance of the taxes which were assessed against his property. So far as that real estate is concerned, we think it was properly assessed. The same observations may be made in relation to the piece of land owned by Jared Bishop, which was designated by the listers as being in that district, when in fact it was without. If the grand list was not conclusive upon the prudential committee in one instance, it was not in the other. It was the duty of the committee to exclude that land from the assessment, for they could only assess lands lying within the district. In both instances the *land and the name of the owner were set in the grand list,* and the only duty of the committee was to ascertain what part of the land was in the district, and to apportion its value. In the former case they were to include the land in the assessment, and in the other to exclude it.

The case is different in relation to the seven acres of land owned by Josiah Southard, which, it is stated, the committee knew lay within the district. That land was properly excluded from the assessment, *as it was wholly omitted from the grand list of that year by the listers.* To have assessed that land, it would have been

necessary for the prudential committee to have incorporated that land into the grand list, and to have appraised its value.   To that extent it would have been making a new grand list and a new appraisal.   It is not competent for the prudential committee of a school district to act as, or discharge the duties of listers or appraisers, and where the listers have neglected to set the land in the grand list to any one, it must necessarily be excluded from any assessment.   The charge of the court to the jury in this particular, we think, was correct.

In relation to the Vanderhoff land the court properly admitted evidence showing that Vanderhoff owned no land in the district, and that the same land was owned by one Norton and assessed and taxed as his property.   The fact that the identical land was placed in the grand list by the listers to two different persons will not avoid an assessment, when it is assessed as the property of one of them, who in fact was the owner.

This disposes of the various objections which were taken at the argument of this case to the assessment of this tax.   In relation to this subject it is proper to observe that the statutes then in existence, and which existed until the acts of 1847 and 1849 were passed, rendered the duties of a prudential committee both responsible and difficult to perform.   They were required to make legal assessments of taxes, yet the manner in which the assessment was to be made was not in many particulars definitely defined or provided for by statute.   The committee in this instance seems to have pursued the only practical mode which could have been adopted to carry into effect the various provisions of the act; and as the case finds that they exercised a sound judgment and discretion in the matter, they are entitled to every reasonable intendment for their protection.

The judgment of the county court is affirmed.