Courser *v.* Powers.

---

## CLARK COURSER *v.* NOAH POWERS.

### *Oath of Office. Justice of the Peace.*

A justice of the peace, in an action against himself for an arrest under a warrant issued by him, cannot justify, if he had not, before such arrest, taken the oath of office prescribed by the constitution of the state.

Nor will a subsequent administration of the official oath, on the same day of the arrest, enable him to do so, and the true time when such oath was taken may be shown.

Neither will the taking of the official oath under an election to the same office for the previous year enable him to justify. The official oath is only commensurate with the appointment, and covers only the existing term of office.

This was an action of trespass for false imprisonment, and was tried by the Orange County Court, at the June term, 1860. The defendant pleaded not guilty, and gave notice of a special justification.

It appeared that on the 19th day of July, 1859, the grand juror of Thetford made complaint to the defendant, as a justice of the peace, against the plaintiff, and the defendant, as such justice, thereupon issued his warrant against the defendant, who was arrested thereon about eight o'clock in the morning, and was detained by the officer until near night, when he gave bail and was released.

It appeared that the defendant was duly appointed and commissioned as a justice of the peace for the year commencing December 1st, 1858, but had not taken the oath of office when said warrant was issued, but did take such oath about two o'clock in the afternoon of said 19th day of July, 1859.

It also appeared that the defendant had held the office of justice of the peace for the previous year, and that within that year he duly took the oath of office.

The defendant objected to the evidence offered by the plaintiff to prove at what time the official oath was administered to the defendant on said 19th day of July, 1859, and the court received the same, subject to such objection.

It was thereupon agreed by the parties that the court should assess the plaintiff's damages, and that, if the supreme court should decide that such evidence was admissible, and that upon the whole case the plaintiff was entitled to recover, the plaintiff should recover final judgment for such damages in the supreme court.

The court assessed the plaintiff's damages at five dollars.

The county court gave judgment for the defendant, to which the plaintiff excepted.

*Howard* and *Collins*, for the plaintiff.

*C. W. Clarke*, for the defendant.

POLAND, Ch. J.—The question presented by this case is, whether a justice of the peace can justify an arrest upon a warrant, issued and signed by him, before he has taken the official oath required by the constitution of the state. The defendant insists that it was not necessary that he should take such official

oath in order to justify under the warrant; that this requirement of the constitution is merely directory.

If this cannot be maintained, then the defendant contends that the oath taken by him, as a justice of the peace for the previous year, when he held the office, extended over and covered the succeeding year, when the warrant was issued; and also, that the administration of the oath subsequent to the arrest of the plaintiff on his warrant, had relation back, and covered the whole of that day, upon the doctrine that in law there are no fractions of a day.

Upon the two grounds last named the court have experienced no difficulty. When a person is elected or appointed to an office for a fixed term, and takes the oath of office, the oath is commensurate with the appointment, and covers that official term, and no more. If the same person be re-appointed or re-elected, he holds his office under the new appointment or election, and must be inducted into office in the same manner as at the first. This was held to be the law in relation to official bonds, in the case of *Orange County Bank* v. *Mann et al.*, *ante* p. 371. The doubt in that case arose from the general language made use of, which, without any violence, might include the performance of the same duties under another election. Nor do we regard this as a case in which the rule, that in law there are no fractions of a day, properly applies. This rule has in general been held applicable to transactions of a public character, such as legislative acts, or public laws, or such judicial proceedings as are matters of record, where parol testimony would be inadmissible to prove any thing in relation to them, and, if it were received, and an issue of fact allowed to be made in every case where they came in question, would lead to uncertainty and confusion. Hence, as a rule of policy, as well as of law, the day on which such an act was done, as shown by the record, is either wholly included or excluded from its operation. But this doctrine is never applied in mere private transactions, involving rights between individuals, either of property, or for an injury to the person of one by the act of another; there the true time, when an act was done, or a right or authority acquired by one, may always be shown. We do not regard the taking of the official

oath by the defendant as being an act of that public character, coming within the rule, and if the arrest of the plaintiff, upon the defendant's warrant, was an illegal and unjustifiable act, as against the defendant, if he had not taken the oath when the arrest was made, we think it was admissible for the defendant to prove when such oath was taken.

The whole subject, as to when this rule of law applies, is thoroughly examined and discussed by that eminent jurist, the late Judge Prentiss, in a case before him in the District Court, reported in the 20th Vt. 653, and we refer to that opinion as embodying the true view of the law on the subject.

We are, therefore, brought to the direct question, whether the defendant can justify the arrest of the plaintiff, upon his warrant, he not having taken the official oath. The constitution of the state, second part, sec. 29, provides that every officer, whether judicial, executive, or military, in authority under this state, before he enters upon the execution of his office, shall take and subscribe the oath of allegiance to the state, and the oath of office, and gives the form in which each shall be administered. The defendant having been duly elected and commissioned as a justice of the peace, held the office under such an apparent title, that if he assumed to act as such, he was undoubtedly a justice *de facto* ; so that as to third persons his acts must be regarded as legal, and could not be brought in question. But here the defendant, himself, is called upon in an action to justify an arrest made by his command, and all the cases agree that in such cases the officer must show every thing done necessary not only to his legal election or appointment, but also to his legal induction into office.

The reason for this distinction is obvious, and founded in good sense and substantial justice. Third persons, who are called upon to act under the authority of public officers, or who have occasion to avail themselves of the official aid of such officers, are not supposed to know, or to have the means of readily ascertaining, whether such officers have complied with all the necessary legal requirements to qualify them to perform their duties, but if such officer has been legally elected or appointed, and is in the performance of the duties of his office, they have a right to

presume that he has taken all the necessary steps to his due qualification.

But the officer himself has no such immunity, because there is no occasion for it, as he must always know whether he has complied with the requirements of the law in his induction or qualification to the office.

This question has been before this court to some extent in former cases, though not expressly and directly adjudicated. In *Adams* v. *Jackson*, 2 Aik. 145, the plaintiff claimed title to the land in question, under a deed from a constable who had sold the land for taxes. The record was produced of the election of the constable, upon which was the word *sworn*. It was considered doubtful whether this was sufficient evidence that the constable was legally sworn, but the court held that the constable being in office under a valid election, he was *de facto* an officer, and the legality of his acts could not be called in question between third persons. The distinction between officers *de facto*, whose official acts bind third persons, and officers *de jure*, who may themselves justify their official acts, is very clearly defined by SKINNER, Ch. J., and the whole argument of the opinion proceeds upon the ground, that in order to make an officer *de jure* he must have taken the official oath.

*Andrews* v. *Chase*, 5 Vt. 409, was an action of trespass against a highway surveyor for property taken and sold for the payment of taxes against the plaintiff. The defendant was sworn before a justice of the peace on a day subsequent to the meeting at which he was elected. The plaintiff claimed that it should appear by the record that he was sworn, and that the oath should have been administered by the town clerk, or one of the selectmen. The court held that the plaintiff was properly sworn, and that it need not appear of record. In this case also, it is rather assumed than decided, that unless the defendant had been properly sworn, he could not justify his act of taking the plaintiff's property.

In *Putnam* v. *Dutton*, 8 Vt. 396, it was objected to an auditor's report that it did not appear therefrom that the auditor was sworn, but proof was made in court that he was in fact sworn. The court decided that it need not appear from the report that the

auditor was sworn, and that unless the contrary was proved, it would be presumed he was, as the statute then required it. In the opinion of the court, REDFIELD, J., says : " It is true the statute requires the auditor to be sworn, and if he proceeds without being sworn, and this is made to appear in the proper mode, the report could not be accepted."

In *McGregor* v. *Balch et al.*, 14 Vt. 428, the question was whether the official acts of a justice of the peace, who also held the office of deputy postmaster, were valid between third persons. WILLIAMS, Ch. J., who delivered the judgment of the court, discussed at length the distinction between an officer *de facto*, whose acts are valid, as respects third persons, but invalid, as respects himself, and an officer *de jure*, who can himself justify, and cites with approbation the case in 5th Mass., where it was held that an officer not duly sworn could not justify his acts in an action against himself. The same question has been before the courts in other states, and by implication, at least, decided.

*Colburn* v. *Ellis et al.*, 5 Mass. 427, was an action for an assault and false imprisonment ; the defendants justified, as parish assessors, and the point directly decided by the court was, that the record of the official oath of the defendants, did not show that they were properly sworn into office, and judgment was rendered for the plaintiff. No question was made, as appears by the case, either by court or counsel, but that this was necessary to enable the defendants to justify the arrest of the plaintiff.

In *Wells et al.* v. *Battelle et al.*, 11 Mass. 477, the direct point decided was, as to the power of a parish clerk to amend his record, so as to show that the defendants were duly sworn as assessors.

In *Bucknam* v. *Ruggles*, 15 Mass. 180, it was held that a levy of an execution upon real estate. made by a deputy sheriff, who had not been duly sworn as such, was valid between the debtor and creditor, upon the ground that he was a good officer *de facto*. Both these cases, by implication, clearly recognize the doctrine, that to make a public officer such *de jure*, so that he can protect himself under his official shield, he must take the official oath, when one is required by law.

In *People* v. *Collins*, 7 Johns. 549, it was held that the acts of commissioners of highways, who had not been sworn into office,

were valid as to third persons, on the ground that they were officers *de facto*.

In New Hampshire the question seems to have been more directly decided. The constitution of that state, is very similar to our own in this respect, except, that it does not apply to town officers. But by statute in that State, all town officers before they entered upon the performance of official duties, are required to take the official oath.

In *Johnston* v. *Willson et al.*, 2 N. H. 202, it was decided that in an action against a town collector for property seized for taxes, the defendant could not justify the taking unless he had been duly sworn into office. The arguments of the counsel are not given, so that it cannot be known what ground was claimed, but the point is discussed with the usual fullness of learning that characterized Judge Woodbury, and is directly decided.

In *Proprietors of Cardigan* v. *Page*, 6 N. H. 182, it was decided that a sale of lands by a town collector for taxes was void, unless it appeared by the record that such collector had taken the oath prescribed by law. It will be noticed that under a similar state of facts, this court held, in *Adams* v. *Jackson*, *ubi sup.*, that the acts of the collector were valid as an officer *de facto*.

In a subsequent case, *Blake* v. *Sturtevant et al.*, 12 N. H. 567, UPHAM, J., speaking of this case, says : " This case is now qualified in those instances where third persons are interested, where it is merely necessary to show an officer *de facto*, but the rule is correctly laid down in all cases where an individual must be shown to be an officer *de jure*." The last named case was an action against the selectmen of Keene for causing the plaintiff's oxen to be sold for taxes, and it was held that the defendants could not justify their official acts, without proving that they were duly qualified by taking the oath prescribed by law, that without this they were not officers *de jure*.

In *Cavis* v. *Robinson*, 9 N. H. 524, it was decided that a collector of taxes duly elected by the town, could not justify a taking of property for taxes, unless he had duly taken the oath of office. The same principle was again affirmed in *Ainsworth* v. *Dean*, 1 Fost. 400, and in several other cases in New Hampshire.

In Maryland their state constitution has a provision in nearly

the same language as our own, requiring all officers to take and subscribe the oath of office before they enter upon its duties. In *Thomas* v. *Owens*, 4 Maryland 189, the question arose in the following form: The plaintiff was elected controller of the treasury on the 5th of November, 1851, and duly commissioned, but did not take the official oath until the 24th of February, 1852. The plaintiff claimed that his salary commenced at the time of his election and date of his commission. The defendant, who was treasurer of the state, refused to pay, except from the time the plaintiff took the oath of office, and the question before the court was, which was right. The court decided in favor of the defendant. LE GRAND, Ch. J., said : " Now we hold that the late controller could not be considered as an officer until he was qualified by taking the oath prescribed by the fourth section of the first article. After his election and commission by the Governor, he had the right to invest himself with the powers and entitle himself to the salary, by qualifying in the manner pointed out by the constitution, but until he actually did qualify, he was no more controller than any other citizen, his qualification being an indispensable prerequisite to his investiture with the authority and responsibilities of the office." We have found no decision in conflict with the cases above referred to.

In considering the effect of this provision of the constitution, it is proper to refer to the common law on the subject, and the importance which had ever been attached to oaths in England, from whence our own law is mainly derived. By the common law all officers of justice were bound to take an oath for the due execution of justice ; though it was held that if such *promissory* oath were broken, the violators could not be punished for perjury, but should be punished by a severe fine ; *Jac. Law Dictionary, title Oath ;* Wood's Inst. 412.

The acts of Parliament requiring oaths of every person appointed to perform any office, trust or duty, are very numerous, and not only for such purposes, but oaths applying to particular classes, and sometimes to the whole people, as the test oaths, oath of supremacy, &c., important events, not only in the legal, but also in the political history of that Government. It was ever regarded as an important guaranty for the due performance of

any public office or duty, that the person to perform it should, in a public and solemn manner, call God to witness his promise to be just and faithful in the administration of it.

Such being the estimation of the importance and value of oaths, when our constitution was formed, we cannot suppose that our ancestors, in making this requirement and express provision of the fundamental law of the state, intended it to be merely directory, and to be obeyed or not, at the pleasure of her public servants. Their idea was similar, as we think, to that expressed by a very ancient English writer, who says: "Anciently, at the end of a legal oath was added, *so help me God at his holy dome,* i. e. judgment, and our ancestors would not believe that a man could be so wicked as to call God to witness anything which was not true, but that if any one should be perjured, he must continually expect that God would be the revenger." We are of opinion, therefore, that the official oath required by the constitution is a necessary requisite to the legal induction into office, and that any person that has been legally elected or appointed to such office, and assumes its duties without taking the oath, cannot be regarded as an officer *de jure,* and cannot, therefore, in action against himself, justify under his official character. This view, we believe, is not only in accordance with principle and authority, but also in harmony with the general understanding and practice of the people, of the legal profession, and judicial tribunals of the state ever since the constitution was formed. We have examined this subject with the more care, in consequence of an opinion advanced by a late distinguished judge of this court, in giving the judgment of the court in *Taylor* v. *Nichols et al.,* 29 Vt. 194, to the effect that this requirement of the official oath is mere form, and should be regarded as directory merely. The action was on a receipt given by the defendants to the plaintiff as sheriff, and the defence was that the sheriff never gave any legal recognizance as such, and therefore never became legally sheriff. The court inclined to consider the recognizance itself valid, but held, that whether so or not, as the plaintiff was a good officer *de facto,* and the attachment, therefore, legal between the parties, and as this suit was merely to enforce the attachment for the benefit of the creditor, the

action could be maintained. It does not appear from the case that any question arose as to the plaintiff having take the oath of office, and what was said on this point by the learned judge was merely by way of illustration, and probably without particular examination of the precise point involved in his observation.

The judgment of the county court is reversed, and judgment rendered for the plaintiff for the damages assessed by the county court.